**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

ERIC ORWOLL, et al.,

Plaintiffs,

v. Case No. 3:26-cv-00239-BSM

UNITED STATES DEPARTMENT OF JUSTICE, et al.,

Defendants.

**PLAINTIFFS' RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT DAVID CAMERON'S MOTION TO DISMISS**

Plaintiffs Eric Orwoll, Peter Julius Csere, Scott Thomas Hallowood, Wisdom Woods LLC, Global Homestead Solutions LLC, North Arkansas Excavation LLC, Allegory Acres LLC, and Return to the Land (collectively, "Plaintiffs"), by and through undersigned counsel and pursuant to Local Rule 7.2(b), respectfully submit this Response and Brief in Opposition to the Motion to Dismiss filed by Defendant David Cameron, in his official capacity as City Manager of Springfield, Missouri (Doc. 7).

## I. INTRODUCTION

Defendant Cameron asks the Court to treat an official, jointly signed statement of a city government as nothing more than one man's "opinion on a matter of public interest." (Doc. 7 at 4.) The Complaint alleges otherwise. On July 29, 2025, Cameron published on the City of Springfield's official .gov website, under the joint signature of the Springfield City Council and the City Manager, a statement that singled out Return to the Land ("RTTL") by name, condemned its "vision" as "divisive and discriminatory," declared there was "no place in Springfield, or anywhere" for it, and announced that the City "will not stand idly by." (Doc. 1 ¶¶ 4, 41, 54–57.)

Cameron admitted in the same statement that no one from RTTL had ever contacted the City and that his only basis was "media reports." (*Id.* ¶ 55.)

The Motion should be denied. First, Plaintiffs have made a prima facie showing of specific jurisdiction under the effects test of *Calder v. Jones*, 465 U.S. 783 (1984), because Cameron's statement was aimed at an organization whose community, members, and property are in Arkansas. Alternatively, Plaintiffs request limited jurisdictional discovery or, at minimum, transfer or dismissal without prejudice. Second, the Complaint states a First Amendment retaliation claim: an official threat of government action by a city's governing body is not "mere speech," and whether it would chill a person of ordinary firmness is a fact question unsuited to a Rule 12(b)(6) motion. Third, Cameron's remaining arguments on Counts II, III, and VI misread the Complaint or go to matters better addressed on a developed record. Plaintiffs withdraw Count VIII (abuse of process) as to Cameron only.

## II. RELEVANT ALLEGATIONS

Plaintiffs are RTTL, a private membership association; Wisdom Woods LLC, an Arkansas company that owns approximately 158 acres near Ravenden, Sharp County, Arkansas; three Arkansas residents who live on that property; and three other Arkansas limited liability companies. (Doc. 1 ¶¶ 2, 17–24.) The Wisdom Woods property in Arkansas is the community that was the subject of the July 21, 2025 Sky News documentary, which Plaintiffs allege contained fabricated evidence, including a digitally created "WHITES ONLY" image of a tree on the Arkansas property. (*Id.* ¶¶ 3, 48–50.) The documentary set off a wave of media coverage. (*Id.* ¶ 52.)

Eight days later, Cameron, acting in his official capacity, published an official statement on the City's government website under the joint signature of the Springfield City Council and the City Manager. (*Id.* ¶ 54.) The statement said Cameron and the Council had been "made aware of

media reports" about RTTL; conceded that "no one from this group has contacted the City directly"; declared "in the strongest possible terms" that "there is no place in Springfield, or anywhere, for such a divisive and discriminatory vision"; and announced: "As a regional leader, we will not stand idly by in the face of attempts to revive outdated, harmful ideologies." (*Id.* ¶¶ 55–56.) RTTL had never contacted Springfield, proposed any development there, or done anything within Cameron's jurisdiction. (*Id.* ¶ 57.)

Plaintiffs allege that the statement was issued under color of law and constituted an official threat of government action based on Plaintiffs' protected association (*id.* ¶¶ 4, 41, 57); that it was one of a series of official government responses to the same media coverage (*id.* ¶¶ 1, 10, 115–116); and that the government actions have chilled Plaintiffs' speech and association, deterred prospective members, and caused reputational harm and emotional distress (*id.* ¶¶ 107, 109–110, 112). Plaintiffs seek, among other relief, a declaration that the statement violates the First Amendment and an injunction directing Cameron to retract it and to refrain from issuing further official statements condemning Plaintiffs based on media reports. (*Id.* ¶ 11; Prayer ¶¶ A.g, B.e.)

## III. ARGUMENT

### A. Plaintiffs have made a prima facie showing of personal jurisdiction.

**1. Standard.** To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie showing, and the Court views the evidence in the light most favorable to the plaintiff and resolves factual conflicts in its favor. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072–73 (8th Cir. 2004). Arkansas's long-arm statute extends jurisdiction to the full limits of due process, Ark. Code Ann. § 16-4-101(B), so the only question is whether jurisdiction is consistent with due process. *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). Specific jurisdiction requires that the defendant's own suit-related conduct create a

substantial connection with the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–62 (2021) (claims must "arise out of or relate to" the defendant's forum contacts).

**2. Cameron's statement was expressly aimed at an Arkansas community.** Where a defendant commits an intentional act expressly aimed at the forum state, and the brunt of the harm is suffered there with the defendant's knowledge, the forum may exercise jurisdiction. *Calder*, 465 U.S. at 789–90. The Eighth Circuit applies *Calder* where the plaintiff shows (1) intentional acts, (2) expressly aimed at the forum state, (3) causing harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum. *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010).

Each element is satisfied here. The statement was an intentional, official act. It named RTTL and condemned its "vision" based on media reports, and the only community those reports described is the Wisdom Woods property in Sharp County, Arkansas. (Doc. 1 ¶¶ 2, 50, 55, 57.) The organization Cameron targeted had no presence in Springfield; it had never contacted the City or proposed anything there. (*Id.* ¶ 57.) A statement that there is "no place … anywhere" for that "vision," and that the City "will not stand idly by," is aimed at the people and the community that hold that vision, and those people and that community are in Arkansas. The resulting harms to Plaintiffs' association, membership, and reputation (*id.* ¶¶ 107, 109, 112) fell where Plaintiffs live and associate.

This case differs from *Johnson*, on which Cameron relies. *Johnson* involved private internet postings by consumers about a business, and the court concluded that the postings were not aimed at the forum, only at plaintiffs who happened to live there. 614 F.3d at 796–97. Here, the defendant is a government official issuing an official statement about a specific organization

whose only physical community is in the forum, in response to reporting about events in the forum. As in *Calder*, the forum state was "the focal point both of the story and of the harm suffered." 465 U.S. at 789. Plaintiffs acknowledge that *Walden* forbids resting jurisdiction on a plaintiff's forum connections alone, 571 U.S. at 285, but the connection here comes from what Cameron chose to target: an Arkansas community.

**3. Alternatively, the Court should permit limited jurisdictional discovery.** Jurisdictional discovery is appropriate where the facts necessary to resolve the jurisdictional question are unknown or disputed. *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003). Cameron has submitted no affidavit; he asserts in briefing that there are "no contacts" with Arkansas. (Doc. 7 at 3.) Plaintiffs allege that the government responses to the media coverage, including Cameron's, were coordinated or convergent. (Doc. 1 ¶¶ 10, 115, 127.) Plaintiffs request leave to take limited discovery on (a) any communications between Cameron or the City and Arkansas officials, Arkansas media, or other Defendants concerning RTTL; (b) how the statement was distributed, including to Arkansas outlets; and (c) the sources Cameron relied on in drafting it.

**4. At minimum, any dismissal should be without prejudice, or the claims should be severed and transferred.** A dismissal for lack of personal jurisdiction is not an adjudication on the merits. Fed. R. Civ. P. 41(b). And because personal jurisdiction is a threshold question, the Court should not reach Cameron's Rule 12(b)(6) arguments if it finds jurisdiction lacking. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999). In the alternative, the Court may sever the claims against Cameron under Fed. R. Civ. P. 21 and transfer them to the Western District of Missouri under 28 U.S.C. § 1406(a), which a court may do even when it lacks personal jurisdiction over the defendant. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).

**B. The Complaint states claims against Cameron.**

**1. Standard.** A complaint survives a Rule 12(b)(6) motion if it contains sufficient factual matter, accepted as true, to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint is read as a whole, not parsed piece by piece, and reasonable inferences are drawn in the plaintiff's favor. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

Cameron agrees that this official-capacity suit is in substance a suit against the City. (Doc. 7 at 2.) That framing helps Plaintiffs. The statement was issued under the joint signature of the City Council and the City Manager on the City's official website. (Doc. 1 ¶ 54.) A deliberate choice by the officials with final authority over the subject is municipal policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). The statement is therefore the City's own official act, not a private opinion.

**2. Count I: First Amendment retaliation.** A retaliation plaintiff must show (1) protected activity, (2) adverse government action that would chill a person of ordinary firmness from continuing that activity, and (3) that the action was motivated at least in part by the protected activity. *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 859–60 (8th Cir. 2024). Cameron challenges only the second element.

*a. An official threat of government action is adverse action.* Cameron characterizes the statement as opinion that could produce at most embarrassment. (Doc. 7 at 4.) But the Complaint alleges an official threat. The City's governing body named RTTL, declared there was "no place in Springfield, or anywhere" for its "vision," and announced that the City "will not stand idly by." (Doc. 1 ¶¶ 55–57.) Government officials may not use threats of official action to suppress disfavored association, even informally. *Cf. Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66–68 (1963) (holding that the government cannot bypass the Constitution by using indirect, informal coercion to accomplish a level of censorship that would be illegal if done through formal laws). In

*National Rifle Ass'n of America v. Vullo*, 602 U.S. 175 (2024), the Supreme Court explained that whether official communications cross the line turns on how they would reasonably be understood, considering factors such as the official's word choice and tone, the official's regulatory authority, and whether the communication refers to adverse consequences. *Id.* at 189–91. A city that controls zoning, permitting, and land use in its territory, announcing that it will "not stand idly by" against a named group's "vision," can reasonably be understood to be promising to use that authority. The Eighth Circuit likewise recognizes that a threat of official retaliation can itself be adverse action. *See Santiago v. Blair*, 707 F.3d 984, 992–93 (8th Cir. 2013); *Scheffler v. Molin*, 743 F.3d 619, 622 (8th Cir. 2014) (discussing *Santiago*).

*b. The cases Cameron cites do not support dismissal.* Defendant Cameron cites *Garcia v. City of Trenton*, 348 F.3d 726 (8th Cir. 2003), which supports denial of the motion to dismiss. In that case, the Court reversed the trial court's granting judgment to a Mayor that told a citizen that an ordinance would be enforced against her in retaliation of her exercising her free speech. *Id.* at 728–29. *McNeally v. HomeTown Bank*, 155 F.4th 1000 (8th Cir. 2025), on which Cameron relies is also directly on point. In that case, the Plaintiff was initially banned from public school property in retaliation for exercising her right to free speech. The government subsequently clarified the ban and expressly stated that she would be permitted to attend meetings. McNeally was aware of the clarification on the ban, but said she still did not "feel comfortable being anywhere in those buildings" because she was under investigation. *Id.* at 1007. Summary judgment against the plaintiff was reversed by the Eighth Circuit on her retaliation claims against a school superintendent. Neither case suggests that an official threat by a city's governing body is non-actionable as a matter of law at the pleading stage.

The Eighth Circuit has also held that a public official's derogatory personal comments, on a developed summary-judgment record, did not satisfy the ordinary-firmness test, while recognizing that "embarrassment, humiliation and emotional distress may be sufficient" in some cases. *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002). *Naucke* is distinguishable: it was decided on a full record, the plaintiff had in fact continued speaking, and the conduct was personal gibes rather than an official, jointly signed statement of a city government announcing that it would act.

*c. Ordinary firmness is a fact question.* The ordinary-firmness test is objective, *Garcia*, 348 F.3d at 729, but its application depends on the circumstances, and the Eighth Circuit reviews a district court's ordinary-firmness determination as a finding of fact. *See Bennie v. Munn*, 822 F.3d 392 (8th Cir. 2016). Plaintiffs allege that the government actions, including Cameron's statement, chilled their speech and association and caused a decline in membership applications. (Doc. 1 ¶¶ 107, 112.) Cameron's contrary view of how an ordinary person would react is a merits argument for a later stage.

**3. Count II: Conspiracy.** A conspiracy claim requires facts suggesting a meeting of the minds. *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). But an agreement may be proven by circumstantial evidence, and conspirators need not know every detail of the plan. *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008). The Complaint alleges that the official responses shared a common trigger, common targets, and a common pattern, and that Cameron's statement was among the first of them, issued eight days after the documentary. (Doc. 1 ¶¶ 54, 115–116, 127, 155–158.) Plaintiffs acknowledge that the allegations specific to Cameron's role in any agreement are limited, and that facts about communications among government actors are uniquely

in Defendants' possession. If the Court finds these allegations insufficient, Plaintiffs request dismissal without prejudice and leave to amend after limited discovery.

**4. Count III: Equal protection.** Cameron argues that Count III fails because he took no "enforcement action." (Doc. 7 at 5.) But the Equal Protection Clause reaches official action motivated by a discriminatory purpose, which may be inferred from the surrounding circumstances, including departures from normal practice and the sequence of events. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977). The Complaint alleges that Cameron's official statement singled out Plaintiffs, who are identified as a class by race and European heritage, based solely on media portrayals of them as "whites-only" (Doc. 1 ¶¶ 55–57, 158), while other identity-based community and housing initiatives have not drawn comparable official condemnation (*id.* ¶¶ 101–105). Whether those groups are adequate comparators is a factual question that should not be resolved on the pleadings.

**5. Count VI: Declaratory judgment.** Plaintiffs agree that the Declaratory Judgment Act does not itself confer jurisdiction. Jurisdiction here rests on 28 U.S.C. § 1331 and Plaintiffs' § 1983 claims (Doc. 1 ¶¶ 13, 15), and Count VI requests a remedy for the First Amendment violation pleaded in Count I. Nor is the relief purely retrospective. Plaintiffs seek an injunction directing retraction of the statement and barring future official statements condemning Plaintiffs based on media reports. (*Id.* Prayer ¶ B.e.) The statement remains published on the City's official website today, so the alleged violation is ongoing.[1] Declaratory relief that accompanies a request to stop continuing and future conduct is prospective, unlike the request in *Justice Network, Inc. v. Craighead County*, 931 F.3d 753, 764 (8th Cir. 2019), which sought only a declaration about completed past conduct.

[1] https://www.springfieldmo.gov/m/newsflash/Home/Detail/12948.

**6. Count VIII: Abuse of process.** Plaintiffs withdraw Count VIII as to Defendant Cameron only. The Court therefore need not reach Cameron's choice-of-law argument.

### C. Alternatively, Plaintiffs request leave to amend.

If the Court finds any claim against Cameron insufficiently pleaded, Plaintiffs respectfully request that dismissal be without prejudice and that they be granted leave to amend. Leave should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). This is Plaintiffs' first pleading, no scheduling order has been entered, and Cameron would suffer no prejudice. Plaintiffs will submit any proposed amended complaint as required by the Local Rules.

## IV. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendant David Cameron's Motion to Dismiss (Doc. 7) as to Counts I, II, III, and VI; note Plaintiffs' withdrawal of Count VIII as to Cameron; and, in the alternative, permit limited jurisdictional discovery, sever and transfer the claims against Cameron to the Western District of Missouri, or dismiss without prejudice and with leave to amend.

Dated: October 23, 2026

Respectfully submitted,

/s/ Jonathan Gross
Jonathan Gross (MD Bar ID: 1912170138)
LAW OFFICE OF JONATHAN GROSS
2833 Smith Ave., Suite 331
Baltimore, MD 21209
(443) 813-0141
jon@jonathangross.law

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on October 23, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including Christopher M. Hoeman, Deputy City Attorney, counsel for Defendant David Cameron.

/s/ Jonathan Gross