**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**ERIC ORWOLL, *et al.*** **PLAINTIFFS**

**v.** **CASE NO. 3:26-CV-00239-BSM**

**UNITED STATES DEPARTMENT OF JUSTICE,**
***et al.*** **DEFENDANTS**

# STATE DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

## Table of Contents


Table of Contents ........ i

Table of Authorities ........ ii

Introduction ........ 1

Background ........ 2

Argument ........ 2

I. The Arkansas Securities Department Has Sovereign Immunity From Suit ........ 2

II. The Attorney General, Commissioner Marshall, And Joslin Have Sovereign Immunity, and the *Ex Parte Young* Doctrine Does Not Apply ........ 5

III. Plaintiffs Fail to State a Claim Against State Defendants ........ 7

A. The applicable 12(b)(6) standard ........ 7

B. Plaintiffs fail to state a First Amendment retaliation claim against State Defendants ........ 8

1. *Plaintiffs fail to state a First Amendment retaliation claim against Attorney General Griffin* ........ 9

2. *Plaintiffs fail to state a First Amendment retaliation claim against Arkansas Securities Commissioner Susannah Marshall* ........ 13

3. *Plaintiffs fail to state a First Amendment retaliation claim against Joe Joslin* ........ 14

C. Plaintiffs fail to state a conspiracy claim against State Defendants ........ 16

D. Plaintiffs fail to state an equal protection claim against State Defendants ........ 19

E. Plaintiffs fail to state a due process claim against ASD Defendants ........ 20

F. Plaintiffs fail to state a declaratory judgment claim against State Defendants ........ 21

G. Plaintiffs' state-law abuse of process claim against State Defendants is barred by sovereign immunity, and even if it weren't, Plaintiffs fail to state a claim ........ 22

Conclusion ........ 23

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*281 Care Comm. v. Arneson*,
638 F.3d 621 (8th Cir. 2011)....6

*Aldridge v. City of St. Louis, Mo.*,
75 F.4th 895 (8th Cir. 2023)....13

*Altonen v. City of Minneapolis*,
487 F.3d 554 (8th Cir. 2007)....15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....8, 14

*Atascadero State Hosp. v. Scanlon*,
473 U.S. 234 (1985)....4

*Atkinson v. Bohn*,
91 F.3d 1127 (8th Cir. 1996)....13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....8, 11

*Burk v. Beene*,
948 F.2d 489 (8th Cir. 1991)....4

*Church v. Missouri*,
913 F.3d 736 (8th Cir. 2019)....6

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019)....3

*Cory v. White*,
457 U.S. 85 (1982)....3

*Cunningham v. Kahler*,
171 F.4th 1115 (8th Cir. 2026)....6

*Davis v. Jefferson Hosp. Ass'n*,
685 F.3d 675 (8th Cir. 2012)....18

*Dobrovolny v. Moore*,
126 F.3d 1111 (8th Cir. 1997)....21

*Doe v. Bd. of Regents of the Univ. of Ne.*,
2026 WL 1723945 (D. Neb. June 15, 2026) ........ 3

*Edelman v. Jordan*,
415 U.S. 651 (1974) ........ 3

*Filyaw v. Corsi*,
150 F.4th 936 (8th Cir. 2025) ........ 6

*Fryberger v. Univ. of Ark.*,
889 F.3d 471 (8th Cir. 2018) ........ 3

*Gibson v. Regions Fin. Corp.*,
557 F.3d 842 (8th Cir. 2009) ........ 22, 23

*Gilani v. Matthews*,
843 F.3d 342 (8th Cir. 2016) ........ 19, 20

*Gonzalez v. Bendt*,
971 F.3d 742 (8th Cir. 2020) ........ 11

*Gordon v. Bd. of Trs. of the Univ. of Arkansas*,
168 F. Supp. 3d 1148 (E.D. Ark. 2016) ........ 4

*Grantham v. Trickey*,
21 F.3d 289 (8th Cir. 1994) ........ 7

*Green v. City of St. Louis*,
52 F.4th 734 (8th Cir. 2022) ........ 12

*Green v. Mansour*,
474 U.S. 64 (1985) ........ 4

*Hadley v. N. Ark. Cmty. Tech. Coll.*,
76 F.3d 1437 (8th Cir. 1996) ........ 4

*Hans v. Louisiana*,
134 U.S. 1 (1890) ........ 3

*Houston Cmty. Coll. Sys. v. Wilson*,
595 U.S. 468 (2022) ........ 12

*Humphrey v. Eureka Gardens Pub. Facility Bd.*,
891 F.3d 1079 (8th Cir. 2018) ........ 6

*Idaho v. Coeur d'Alene Tribe of Idaho*,
521 U.S. 261 (1997) ........ 6

*In Smith v. Reynolds*,
139 F.4th 631 (8th Cir. 2025) ........................................ 7, 22

*Just. Network Inc. v. Craighead Cnty.*,
931 F.3d 753 (8th Cir. 2019) ........................................ 22

*Kingsley v. Lawrence Cty.*,
964 F.3d 690 (8th Cir. 2020) ........................................ 14

*Kroll v. Bd. of Trs. of Univ. of Ill.*,
934 F.2d 904 (7th Cir. 1991) ........................................ 3

*London v. Arkansas Dep't of Correction*,
2022 WL 21795842 (E.D. Ark. Mar. 17, 2022) ........................................ 11

*Matal v. Tam*,
582 U.S. 218 (2017) ........................................ 8

*Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers*,
687 F.3d 1076 (8th Cir.2012) ........................................ 21, 22

*McNeally v. HomeTown Bank*,
155 F.4th 1000 (8th Cir. 2025) ........................................ 12, 16

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ........................................ 21

*Mendoza v. U.S. Immigration & Customs Enf't*,
849 F.3d 408 (8th Cir. 2017) ........................................ 17, 18

*Mertens v. Hewitt Assoc.*,
508 U.S. 248 (1993) ........................................ 3

*Minn. Chapter of Associated Builders & Contractors v. Ellison*,
153 F.4th 695 (8th Cir. 2025) ........................................ 5

*Mitchell v. Kirchmeier*,
28 F.4th 888 (8th Cir. 2022) ........................................ 13, 16

*Montin v. Est. of Johnson*,
636 F.3d 409 (8th Cir. 2011) ........................................ 6

*Murray v. Lene*,
595 F.3d 868 (8th Cir. 2010) ........................................ 17

*NAACP v. Alabama ex rel. Patterson*,
357 U.S. 449 (1958) ........................................ 9

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) .......... 8, 9, 12

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993) .......... 3, 5, 6

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) .......... 3, 22

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009) .......... 8

*Quern v. Jordan*,
440 U.S. 332 (1979) .......... 4

*Reed v. Goertz*,
598 U.S. 230 (2023) .......... 21

*Rinne v. Camden Cnty.*,
65 F.4th 378 (8th Cir. 2023) .......... 10, 12

*S. Ark. Petroleum Co. v. Schiesser*,
343 Ark. 492, 36 S.W.3d 317 (2001) .......... 23

*Saunders v. Thies*,
38 F.4th 701 (8th Cir. 2022) .......... 19

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996) .......... 3, 4

*Solomon v. Petray*,
795 F.3d 777 (8th Cir. 2015) .......... 17, 18, 19

*Union Nat'l Bank of Little Rock v. Kutait*,
312 Ark. 14, 846 S.W.2d 652 (1993) .......... 23

*United States v. Bell*,
86 F.3d 820 (8th Cir. 1996) .......... 20

*Verizon Md. Inc. v. Pub. Serv. Comm'n*,
535 U.S. 635 (2002) .......... 6

*Wal-Mart Stores, Inc. v. Binns*,
341 Ark. 157, 15 S.W.3d 320 (2000) .......... 23

*Waters v. Millsap*,
2015 Ark. 272, 465 S.W.3d 851 .......... 16

*Watson v. Boyd*,
119 F.4th 539 (8th Cir. 2024) .......... 13

*Webb v. City of Maplewood*,
889 F.3d 483 (8th Cir. 2018) .......... 3

*White v. Jackson*,
865 F.3d 1064 (8th Cir. 2017) .......... 14

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) .......... 5, 22

*Wolk v. City of Brooklyn Ctr.*,
107 F.4th 854 (8th Cir. 2024) .......... 5, 9, 10, 11, 12, 14, 15, 16, 17

**Statutes**

28 U.S.C. § 2201(a) .......... 21

42 U.S.C. § 1983 .......... 4, 5, 14

Ark. Code Ann. § 23-42-201(b)(1) .......... 2, 4

Ark. Code Ann. § 23-42-205 .......... 16

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .......... 5, 7

U.S. Const. amend. XI .......... 3

U.S. Const. amend. XIV, § 1 .......... 21

## Introduction

Plaintiffs seek to turn two things into a federal lawsuit: public statements by Attorney General Tim Griffin that his office was "reviewing" or "looking into" Plaintiffs' activities, and an investigation by the Arkansas Securities Department ("ASD") into whether Plaintiffs were offering unregistered securities. But the Complaint does not allege that Attorney General Griffin or ASD took any enforcement action against Plaintiffs. No subpoenas were issued, no administrative proceedings were commenced, and no lawsuits were filed. Instead, Plaintiffs allege that the Attorney General made public statements and that ASD sent information requests to which Plaintiffs voluntarily responded. From these allegations, Plaintiffs assert claims for First Amendment retaliation, conspiracy, equal protection, due process, and abuse of process. Those claims fail for several reasons. First, ASD is an agency of the State of Arkansas and is entitled to sovereign immunity under the Eleventh Amendment. Second, Attorney General Griffin, Commissioner Susannah Marshall, and ASD counsel Joe Joslin are likewise entitled to sovereign immunity because the Complaint alleges no ongoing violation of federal law that would permit Plaintiffs to proceed under *Ex parte Young*. Third, even apart from sovereign immunity, the Complaint fails to state a plausible claim for relief against any State Defendant. Plaintiffs cannot establish a constitutional violation merely by characterizing public statements and routine investigative activity as retaliation or selective enforcement. Nor can they establish a conspiracy through speculation about coordinated conduct, a due process violation without the deprivation of a protected interest, or abuse of process when no legal process was issued. Because sovereign immunity bars Plaintiffs' claims and the Complaint independently fails to state a claim upon which relief can be granted, all claims against State Defendants should be dismissed.

## Background

Plaintiffs allege that their constitutional rights have been violated by Attorney General Tim Griffin, the Arkansas Securities Department ("ASD"), ASD Commissioner Susannah Marshall, and ASD counsel Joe Joslin, all of whom are sued in their official capacities for prospective injunctive and declaratory relief (collectively, "State Defendants"). ECF No. 1, ¶¶ 37–40. Plaintiffs allege that an "investigation" conducted by ASD into their business practices was retaliatory and resulted from both a Sky News documentary falsely accusing Plaintiffs of building a "whites only" community in Sharp County, Arkansas, and an anonymous complaint lodged by someone that Plaintiffs describe as a "foreign national." *Id.* ¶¶ 1–3, 58. And they allege that Attorney General Griffin made a statement that he was "reviewing" or "looking into" Plaintiff Return to the Land and that this statement was likewise retaliatory. *Id.* ¶ 40. Plaintiffs assert claims against Attorney General Griffin, ASD, Commissioner Marshall, and Joslin for First Amendment retaliation, conspiracy to violate civil rights, equal protection, due process, and abuse of process. *Id.* ¶¶ 146–179. Plaintiffs also seek a declaratory judgment. *Id.* ¶¶ 170–172.

## Argument

### I. The Arkansas Securities Department Has Sovereign Immunity from Suit.

Plaintiffs allege that the "Arkansas Securities Department is an agency of the State of Arkansas." Dkt. No. 1 ¶ 37. That is correct. *See* Ark. Code Ann. § 23-42-201(b)(1) (creating "within the Department of Commerce the State Securities Department"). And because the Arkansas Securities Department is an agency of the State of Arkansas, it should be dismissed from this suit pursuant to the Eleventh Amendment and sovereign immunity principles.

The Eleventh Amendment and sovereign-immunity principles bar suits against a State and its agencies and departments in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 53 (1996); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890); *Fryberger v. Univ. of Ark.*, 889 F.3d 471, 473 (8th Cir. 2018); *Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court."); *City of Austin v. Paxton*, 943 F.3d 993, 1003 (5th Cir. 2019) ("State agencies are entitled to Eleventh Amendment sovereign immunity."); *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991) ("Indeed, a state agency *is* the state for purposes of the eleventh amendment." (emphasis in original)); *Doe v. Bd. of Regents of the Univ. of Ne.*, No. 4:25CV3058, 2026 WL 1723945, at *3 (D. Neb. June 15, 2026) ("Defendants, as a state agency and state agency official in her official capacity, are entitled to state sovereign immunity under the Eleventh Amendment."). Indeed, "suits against the States and their agencies" "are barred" by sovereign immunity "regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Specifically, because sovereign immunity extends to "any suit in law or equity," U.S. Const. amend. XI, the Eleventh Amendment and sovereign-immunity principles bar a suit "for the recovery of money from the state," *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). *See Mertens v. Hewitt Assoc.*, 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of *legal* relief." (emphasis in original)). And sovereign immunity also bars "a suit seeking an injunction, a remedy available only from equity." *Cory v. White*, 457 U.S. 85, 91 (1982).

The Arkansas Securities Department is an agency of the State of Arkansas. *See* Ark. Code Ann. § 23-42-201(b)(1); Dkt. No. 1 ¶ 37. Accordingly, the Arkansas Securities Department has sovereign immunity and is immune from this suit in federal court.

To be sure, courts have recognized three exceptions to sovereign immunity: waiver, congressional abrogation, and the *Ex parte Young* doctrine. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) (discussing the three exceptions); *Gordon v. Bd. of Trs. of the Univ. of Arkansas*, 168 F. Supp. 3d 1148, 1153 (E.D. Ark. 2016) (also discussing the "three exceptions" to sovereign immunity). But none apply here.

***First***, "States may not be sued in federal court unless they consent to it in unequivocal terms." *Green*, 474 U.S. at 68. Stated differently, "if a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985). Plaintiffs cannot point to a waiver. There hasn't been one.

***Second***, Congress can abrogate a State's sovereign immunity in some circumstances, but that abrogation must be "unequivocally expresse[d]." *Seminole Tribe of Fla.*, 517 U.S. at 55. There has been no such abrogation here. Plaintiffs sue pursuant to 42 U.S.C. § 1983. *See* ECF No. 1 ¶¶ 13, 15, 37 ("The Plaintiffs are suing the Arkansas Securities Department in its official capacity for declaratory and injunctive relief under § 1983."). And the Eighth Circuit has squarely held that "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)). Therefore, § 1983 does not override sovereign immunity. *Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996). Rather, § 1983 only authorizes suits against "persons" who act under the color of state law. States and arms of the State are not "persons"

subject to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Thus, there is no congressional abrogation that permits Plaintiffs to sue the Arkansas Securities Department in federal court.

***Third***, the *Ex parte Young* doctrine is a "narrow exception" to sovereign immunity that allows "certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Minn. Chapter of Associated Builders & Contractors v. Ellison*, 153 F.4th 695, 698 (8th Cir. 2025). Because its application is limited to state officials, the *Ex parte Young* doctrine "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 146. Accordingly, the *Ex parte Young* fiction does not apply to the Arkansas Securities Department because it is an agency and not an official.

To sum up, the Arkansas Securities Department has sovereign immunity, and no exception to that immunity applies. So the claims against the Arkansas Securities Department should be dismissed under the Eleventh Amendment and on sovereign immunity grounds. Additionally, the claims against the Arkansas Securities Department should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), for the reasons explained below, *see infra* 7–23.

## II. The Attorney General, Commissioner Marshall, and Joslin have sovereign immunity, and the *Ex parte Young* doctrine does not apply.

The Attorney General, Commissioner Marshall, and Joslin are sued in their official capacities for prospective injunctive relief. They are entitled to sovereign immunity, and the *Ex parte Young* doctrine does not apply. *See Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 858 (8th Cir. 2024) ("The doctrine of *Ex parte Young* provides a narrow exception to Eleventh Amendment

immunity allowing suits for prospective injunctive relief against state officials sued in their official capacities, but not suits for prospective injunctive relief against state agencies.").

Under *Ex parte Young*'s narrow exception to sovereign immunity, "a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law." *Church v. Missouri*, 913 F.3d 736, 747 (8th Cir. 2019) (quoting *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011)). To avail themselves of the exception, Plaintiffs need to show (1) "an ongoing violation of federal law" and (2) a request for relief "properly characterized as prospective." *Cunningham v. Kahler*, 171 F.4th 1115, 1119 (8th Cir. 2026) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). Plaintiffs fail at both steps.

A single "discrete act" does not constitute an ongoing violation of the law. *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1083 (8th Cir. 2018) (quoting *Montin v. Est. of Johnson*, 636 F.3d 409, 415 (8th Cir. 2011)). The Eighth Circuit has expressly rejected the theory that "consequences of [an] allegedly discriminatory decision" are sufficient to constitute an ongoing violation. *Id.*

And the requested relief "must be both prospective and equitable." *Filyaw v. Corsi*, 150 F.4th 936, 946 (8th Cir. 2025), *cert. denied*, 223 L. Ed. 2d 556 (Jan. 20, 2026). *Ex parte Young* "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). In considering both requirements, the Court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc.*, 535 U.S. at 645 (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

Plaintiffs point to a handful of past statements by the Attorney General with no past enforcement action whatsoever, and no likelihood of future enforcement. "[T]hat is simply not a claim of an 'ongoing violation' under *Ex parte Young*." *In Smith v. Reynolds*, 139 F.4th 631, 635 (8th Cir. 2025). The same is true for Commissioner Marshall and Joslin. The Complaint contains no allegations that Commissioner Marshall violated Plaintiffs' constitutional rights in the past, much less an ongoing violation of their rights, because it does not allege that she personally took any enforcement action against Plaintiffs. Likewise for Joslin. His purported refusal to close the ASD investigation into Plaintiffs is not an ongoing violation of federal law because the investigation itself does not violate federal law. In sum, Attorney General Griffin, Commissioner Marshall, and Joslin are entitled to sovereign immunity, and the *Ex parte Young* exception does not apply.

## III. Plaintiffs Fail to State a Claim Against State Defendants.

Plaintiffs assert claims against State Defendants for First Amendment retaliation, conspiracy to violate civil rights, equal protection, due process, and abuse of process. Each State Defendant is sued in his or her official capacity and for declaratory and injunctive relief. *See* ECF No. 1, ¶¶ 37, 38, 39, 40.[1] Each claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. The applicable 12(b)(6) standard.

Under Rule 12(b)(6), defendants may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although a court accepts well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, "labels and

[1] Since "qualified immunity does not apply to claims for equitable relief," *Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994), State Defendants do not assert a qualified immunity defense here. Nonetheless, Defendants reserve the right to assert that defense if Plaintiffs amend their complaint to include a claim for damages.

conclusions" and "a formulaic recitation of the elements" do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must include enough factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires factual content that permits a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* Courts do not accept as true legal conclusions couched as factual allegations. *Id.* at 678–79.

**B. Plaintiffs fail to state a First Amendment retaliation claim against State Defendants.**

Plaintiffs assert a First Amendment retaliation claim against each of the State Defendants. *See* ECF No. 1, ¶¶ 146–152. The First Amendment's Free Speech Clause "prohibits government entities and actors from 'abridging the freedom of speech.'" *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024). "When government officials are 'engaging in their own expressive conduct,' though, 'the Free Speech Clause has no application.'" *Id.* (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009)). "The government can 'say what it wishes' and 'select the views that it wants to express.'" *Id.* (quoting *Pleasant Grove City*, 555 U.S. at 467–68). "That makes sense; the government could barely function otherwise." *Id.* And "[w]hen a government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others, and thus does not need to maintain viewpoint-neutrality when its officers and employees speak about that venture." *Id.* (quoting *Matal v. Tam*, 582 U.S. 218, 234 (2017)) (cleaned up). To this end, "[a] government official can share her views freely and criticize particular beliefs, and she can do so forcefully in the hopes of persuading others to follow her lead." *Id.* at 188. "In doing so, she can rely on the merits and force of her ideas, the strength of her convictions, and her ability to inspire others." *Id.* But the government cannot "use the power of the State to punish or suppress disfavored expression."

*Id.* "In such cases, it is 'the application of state power which [courts] are asked to scrutinize.'" *Id.* (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 463 (1958)).

Accordingly, to prove that the government used the power of the State to punish or suppress disfavored expression—in other words, to prove a First Amendment retaliation claim—a plaintiff must establish three elements. "The three elements of a First Amendment retaliation claim are: (1) the plaintiff engaged in protected activity, (2) the government took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Wolk v. City of Brooklyn Ctr.*, 107 F.4th 854, 859–60 (8th Cir. 2024).

The Complaint does not plausibly allege a First Amendment retaliation claim against any of the State Defendants.

#### 1. *Plaintiffs fail to state a First Amendment retaliation claim against Attorney General Griffin.*

Start with the allegations against Attorney General Tim Griffin. Plaintiffs allege that "following the Sky News documentary, Defendant Griffin repeatedly stated to media outlets that his office was 'reviewing' or 'looking into' RTTL, and publicly condemned Plaintiffs' First Amendment-protected speech and association." ECF No. 1 ¶ 40. Plaintiffs further allege that the Attorney General "never informed Plaintiffs of any investigation, never contacted Plaintiffs directly, and never issued any findings or closure." *Id.* And they contend that, "[b]y maintaining an open-ended, uncommunicated 'review' while making public statements that condemn and stigmatize Plaintiffs' protected expression, Defendant Griffin—the state's chief law enforcement officer—has contributed to the campaign of government retaliation against the Plaintiffs for their

protected speech and association." *Id.* These allegations fail to state a First Amendment retaliation claim against the Attorney General.

***First***, the Complaint does not plausibly allege that Plaintiffs engaged in activity protected by the First Amendment. *Wolk*, 107 F.4th at 859; *Rinne v. Camden Cnty.*, 65 F.4th 378, 383 (8th Cir. 2023) (the plaintiff must "plausibly allege[] that he [has] participated in activity that was protected by the First Amendment"). The Complaint alleges only generically that Plaintiffs have engaged in protected speech and activity without alleging a single specific instance—or even a single word—of their protected activities or speech. Plaintiffs allege, for instance, that their "associational activities"—including "the right to form and maintain private groups organized around shared values, beliefs, and cultural heritage"—are protected by the First Amendment. ECF No. 1, ¶ 45. And they contend that they "engaged in constitutionally protected activity: forming and maintaining a private membership association organized around shared values and cultural heritage; publicly advocating for homesteading, intentional communities and private association rights; and defining membership criteria based on shared cultural heritage." *Id.* ¶ 148. But Plaintiffs do not describe or identify their "shared values" with any detail, *id.*, and they only allege that their "membership criteria reference[s] European heritage," *id.* ¶ 158. Further, they do not identify a single instance in which they advocated for any of the things they list or provide any details of their alleged speech. To be sure, Plaintiffs allege what kind of "associational activity" they *do not* engage in: They say they are not a "whites-only community," ECF No. 1, ¶ 50, and they claim that they have been wrongly accused as such. But Plaintiffs' allegations as to what they *are not* and on what basis they *do not* associate simply leaves the Court and the parties guessing as to what they *are* and what First Amendment associational rights they seek to vindicate in this case.

In a similarly generic fashion, Plaintiffs allege that their "speech activities" are protected, and that "RTTL and its members engage in public advocacy through multiple platforms," including Substack and YouTube. *Id.*, ¶ 46. They contend that "[t]hese speech activities address matters of public concern—land use, intentional communities, cultural heritage, private association rights, and constitutional law." *Id.* But again, Plaintiffs do not point to a single instance of their engagement in any "speech activities" that form the basis for this lawsuit or that lead to any retaliation.[2]

The Complaint fails to plausibly allege that Plaintiffs engaged in activity protected by the First Amendment. Because Plaintiffs "do not describe [their] protected speech" or protected associational activities, their "vague and conclusory allegation[s] [are] insufficient to support a claim that [they] [were] retaliated against for exercising [their] First Amendment rights." *London v. Arkansas Dep't of Correction*, No. 4:21-CV-001225-BRW-PSH, 2022 WL 21795842, at *2 (E.D. Ark. Mar. 17, 2022), *report and recommendation adopted*, No. 4:21-CV-001225-BRW-PSH, 2022 WL 21795838 (E.D. Ark. Apr. 13, 2022).

***Second***, the Complaint's allegations also do not show that the Attorney General "took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity." *Wolk*, 107 F.4th at 859–60. "The ordinary-firmness test is designed to weed out trivial matters from substantial violations of the First Amendment." *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020). "Government action that engages the punitive machinery of government to impose concrete consequences in retaliation for speaking out against the government chills

---

[2] If this case were allowed to proceed past the motion to dismiss stage, the practical problems the Complaint would cause in this case are obvious: Because of "plaintiff's conclusory allegations," Defendants "would have little idea where to begin" in preparing an answer to the Complaint. *Twombly*, 550 U.S. at 565 n.10.

speech, while non-actionable retaliatory measures that produce only embarrassment, humiliation and emotional distress do not." *McNeally v. HomeTown Bank*, 155 F.4th 1000, 1007 (8th Cir. 2025) (cleaned up). The kinds of "'concrete consequences," *see id.*, that may constitute prohibited adverse action include "an arrest" or "a prosecution," *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022), banishment from public property, *Rinne*, 65 F.4th at 383, being tear gassed, *Green v. City of St. Louis*, 52 F.4th 734, 739 (8th Cir. 2022), or something similarly concrete.

Here, Plaintiffs only point to the Attorney General's speech as the alleged adverse action and the purported "stigma[]" that it allegedly caused. ECF No. 1, ¶ 40. Yet the Attorney General's purported public condemnation of RTTL, *see id.*, is the Attorney General's "own expressive conduct" to which "the Free Speech Clause has no application," *Vullo*, 602 U.S. at 187. Additionally, the alleged statements by the Attorney General that he was "reviewing" or "looking into" RTTL, ECF No. 1, ¶ 40, is also the Attorney General's own protected speech and does not amount to an adverse action that would chill a person of ordinary firmness from continuing in the activity. Indeed, according to their own allegations, the Attorney General "never informed Plaintiffs of any investigation" and "never contacted Plaintiffs directly," *id.*, belying any suggestion that the Attorney General has taken any "adverse action" against Plaintiffs whatsoever, *Wolk*, 107 F.4th at 859–60, much less an adverse action that would chill a person of ordinary firmness from continuing in the activity. At bottom, Plaintiffs point only to the Attorney General's own protected speech as the purportedly adverse action against them. Plaintiffs therefore fail to plausibly allege the second element of a First Amendment retaliation claim.

***Third***, the Complaint's allegations fail to demonstrate that "the adverse action was motivated at least in part by the exercise of the protected activity." *Id.* at 860. On this element, "a

plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Watson v. Boyd*, 119 F.4th 539, 550 (8th Cir. 2024), *cert. denied*, 146 S. Ct. 280, 223 L. Ed. 2d 106 (2025) (cleaned up). "The motive must cause the injury." *Id.* "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* "In other words, the plaintiffs must demonstrate they were 'singled out' due to their protected expression." *Aldridge v. City of St. Louis, Mo.*, 75 F.4th 895, 899 (8th Cir. 2023). "If the response was driven not by 'animus' but by the defendant's understanding—however mistaken—of his official duties, then it was not 'retaliatory.'" *Id.* (citation omitted). In short, "constitutional torts of retaliation require acting on retaliatory animus." *Mitchell v. Kirchmeier*, 28 F.4th 888, 897–98 (8th Cir. 2022). But the Complaint does not contain specific allegations to reasonably suggest that the Attorney General harbored retaliatory animus towards Plaintiffs, and Courts are not required to credit (and should not credit) "allegations of retaliation" that are "speculative and conclusory." *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996). And even if the Complaint did contain allegations of a retaliatory animus, it fails to plausibly allege a causal connection between such alleged animus and Plaintiffs' subsequent injury. The Complaint therefore fails to plausibly allege the third and final element of a First Amendment retaliation claim.

### 2. *Plaintiffs fail to state a First Amendment retaliation claim against Arkansas Securities Commissioner Susannah Marshall.*

Plaintiffs allege that "Susannah Marshall is the Arkansas Securities Commissioner." ECF No. 1, ¶ 38. "As Commissioner," according to the Complaint, "she is the head of the Arkansas Securities Department and exercises ultimate authority over its investigations and enforcement actions, including the investigations of the Plaintiffs." *Id.* The Complaint contains no other

allegations about Commissioner Marshall, and it alleges no personal involvement by Commissioner Marshall in any of the alleged conduct that forms the basis for this lawsuit. Commissioner Marshall's lack of personal involvement is fatal not just to Plaintiffs' First Amendment claim, but to all of Plaintiffs' claims. "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Kingsley v. Lawrence Cty.*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)). Indeed, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Because Plaintiffs do not allege that Commissioner Marshall was personally involved in any of the underlying conduct that forms the basis for this lawsuit, their First Amendment retaliation claim against Commissioner Marshall fails out of the gate. *See Kingsley*, 964 F.3d at 700; *Iqbal*, 556 U.S. at 676. Additionally, Plaintiffs' First Amendment retaliation claim fails on every element because the Complaint (1) fails to allege that Plaintiffs engaged in protected First Amendment activity, *see supra* 10–11, (2) fails to allege that Commissioner Marshall personally "took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity," and (3) fails to allege that an "adverse action" personally taken by Commissioner Marshall "was motivated at least in part by the exercise of the protected activity." *Wolk*, 107 F.4th at 859–60.

***3. Plaintiffs fail to state a First Amendment retaliation claim against Joe Joslin.***

The Complaint alleges that "Defendant Joe Joslin is the Associate General Counsel of the Arkansas Securities Department and the examining attorney for the ASD investigation." ECF No. 1, ¶ 39. It further alleges that the "Arkansas Securities Department ('ASD') opened an investigation in October 2025," *id.*, that Joslin sent two "information requests" to Plaintiffs, *id.*

¶ 39, and that "[a]fter nearly nine months of document production and responses, Defendant Joe Joslin, the examining attorney, stated by telephone in or about July 2026 that ASD did not plan to take any administrative action and did not plan to request any additional information," *id.* ¶ 5. The Complaint alleges that "Joslin stated over the phone that ASD intended to change the status of the investigation from that of an active investigation to one of monitoring the situation because ASD was aware of other litigation involving the Plaintiffs in Sharp County, Arkansas," and that "ASD refused to formally close the investigation even though ASD found no reason to pursue any alleged violations of Arkansas securities laws." *Id.* Finally, the Complaint alleges that "[t]he investigation was triggered by a complaint letter from an anonymous activist posing as an 'investigative journalist' who, upon information and belief, is a foreign national," *id.* ¶ 58, and that "[t]he investigation concerned whether membership interests in Wisdom Woods LLC and Allegory Acres LLC constitute 'investment contracts' under the Arkansas Securities Act," *id.*

These allegations are insufficient to state a First Amendment retaliation claim against Joslin. On the first element, the Complaint fails to plausibly allege that Plaintiffs engaged in protected First Amendment activity. *See supra* 10–11. On the second element, the Complaint fails to allege that Joslin personally "took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity." *Wolk*, 107 F.4th at 859–60. Joslin's alleged investigation into Plaintiffs, standing alone, is insufficient to satisfy this element. *Cf., e.g.*, *Altonen v. City of Minneapolis*, 487 F.3d 554, 560 (8th Cir. 2007) ("Internal investigations into employee complaints are not adverse employment actions when they do not result in any change in form or condition to the employee's employment."). Notably, the Complaint does not allege that Joslin issued subpoenas to Plaintiffs (or any other legal instrument that might compel a recipient to

respond); the Complaint alleges that Joslin sent "information requests" to Plaintiffs, ECF No. 1, ¶ 39, which Plaintiffs responded to voluntarily. Thus, because the Complaint does not identify the "impos[ition]" of any "concrete consequences" against Plaintiffs, *McNeally*, 155 F.4th at 1007, Plaintiffs' First Amendment claim fails on the second element.

It fails on the third element too. Rather than alleging that Joslin's conduct "was motivated at least in part by the exercise of the protected activity," *Wolk*, 107 F.4th at 859–60, the Complaint alleges that "[t]he investigation was triggered by a complaint letter," ECF No. 1, ¶ 58, and that the investigation concerned whether Plaintiffs were offering unregistered investment contracts, *id.* That alleged investigation is squarely within ASD's authority. *See* Ark. Code Ann. § 23-42-205 (authority to investigate violations of Arkansas Securities Act); *Waters v. Millsap*, 2015 Ark. 272, at 10, 465 S.W.3d 851, 857 (outlining test to determine "whether particular instruments constitute[] a security"). And the basis for allegedly keeping the investigation open rather than closing it, according to the Complaint, was "other litigation involving the Plaintiffs," ECF No. 1, ¶ 5, rather than "retaliatory animus," *Mitchell*, 28 F.4th at 898, against Plaintiffs. The Complaint therefore fails to state a First Amendment retaliation claim against Joslin.

### C. Plaintiffs fail to state a conspiracy claim against State Defendants.

Plaintiffs assert that State Defendants conspired to violate Plaintiffs' civil rights. *See* ECF No. 1, ¶¶ 153–160. Specifically, the Complaint alleges the following: "The Defendants reached an agreement or meeting of the minds—whether explicit or tacit—to target the Plaintiffs with coordinated investigations designed to punish protected speech and association." ECF No. 1, ¶ 155. "The existence of an agreement is supported by common origin in the same media coverage common targets; common timing (ASD second request and HUD investigation initiated the same day); common legal theory; common pattern of investigation-without-complaint and escalation-

without-resolution." *Id.* The Complaint next alleges that, "[a]lternatively, even absent explicit agreement, the Defendants' actions exhibit convergent animus—each independently responding to the same media trigger by pursuing the same targets using the same tactics for the same improper purpose." *Id.*, ¶ 156. Finally, the Complaint alleges that "[t]he Defendants committed overt acts in furtherance of the conspiracy," id. ¶ 157, that "[t]he conspiracy was motivated by class-based, invidiously discriminatory animus," *id.* ¶ 158, that, "[i]n the alternative, the conspiracy was motivated by animus against the Plaintiffs' political viewpoint and First Amendment associational rights," *id.* ¶ 159, and that "[a]s a direct and proximate result, the Plaintiffs have been deprived of their rights to free speech, free association, due process, and equal protection," *id.* ¶ 160.

To prevail on a claim that a defendant conspired to deprive a plaintiff of his constitutional rights, the plaintiff must prove the following: "(1) that the defendant conspired with others to deprive him of a constitutional right; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *Solomon v. Petray*, 795 F.3d 777, 789 (8th Cir. 2015) (cleaned up). "There can be no civil conspiracy without an underlying constitutional violation." *Wolk*, 107 F.4th at 860. Accordingly, "failure to state" a plausible constitutional violation "precludes" a "related civil conspiracy claim." *Id.* Moreover, "a conspiracy claim requires allegations of specific facts showing a 'meeting of the minds' among the alleged conspirators." *Id.* (quoting *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010)). "[M]ere cooperation between entities is not enough to establish a meeting of the minds." *Id.* (citing *Mendoza v. U.S. Immigration & Customs Enf't*, 849 F.3d 408, 422 (8th Cir. 2017)). Likewise, "[m]ere speculation or conjecture is insufficient to prove a civil conspiracy." *Mendoza*, 849 F.3d at 421.

Plaintiff's conspiracy claim fails at the outset because there was no constitutional violation. *Mendoza*, 849 F.3d at 421 ("[B]ecause there was no constitutional violation, this claim necessarily fails."). Plaintiffs' conspiracy claim also fails on the first element. "For the first element," the plaintiff "must 'allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.'" *Mendoza*, 849 F.3d at 421 (quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 685 (8th Cir. 2012)). Plaintiffs fail to meet that standard. On this element, the Complaint alleges the following: "The Defendants reached an agreement or meeting of the minds—whether explicit or tacit—to target the Plaintiffs with coordinated investigations designed to punish protected speech and association." ECF No. 1, ¶ 155. "The existence of an agreement is supported by common origin in the same media coverage common targets; common timing (ASD second request and HUD investigation initiated the same day); common legal theory; common pattern of investigation-without-complaint and escalation-without-resolution." *Id.* These allegations do not suffice. None of these allegations specifically demonstrate with material facts that Attorney General Griffin, ASD, Commissioner Marshall, or Joslin, had a meeting of the minds with each other or with any other defendant.

It fails on the second element too. To satisfy the second element, Plaintiffs must specifically allege "that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy." *Solomon*, 795 F.3d at 789. The Complaint does not identify any specific overt acts that ASD, Attorney General Griffin, Commissioner Marshall, or Joslin took in furtherance of the alleged conspiracy. It merely states that "[t]he Defendants committed overt acts in furtherance of the conspiracy." ECF No. 1, ¶ 157. That is insufficient.

Finally, Plaintiffs' conspiracy claim fails on the third element because the Complaint does not show "that the overt act injured the plaintiff." *Solomon*, 795 F.3d at 789. Indeed, Plaintiffs do not point to or describe with particularity any injury that they have purportedly suffered from any overt act by Defendants. At most, Plaintiffs point to information requests that they received from ASD, but Plaintiffs were not required to respond to those requests. Indeed, Plaintiffs responded voluntarily, belying any suggestion that they were in any way injured by any overt acts.

**D. Plaintiffs fail to state an equal protection claim against State Defendants.**

In Count III of the Complaint, Plaintiffs assert a claim under the Equal Protection Clause for selective enforcement against each of the State Defendants. ECF No. 1, ¶¶ 161–163. Specifically, the Complaint alleges that "[t]he Equal Protection Clause of the Fourteenth Amendment, applicable to the federal government through the Fifth Amendment's Due Process Clause, prohibits selective enforcement based on arbitrary or discriminatory classifications." ECF No. 1, ¶ 162. The Complaint also alleges that "Plaintiffs are similarly situated to dozens of other private membership associations and intentional communities that define membership by race, ethnicity, or religion yet none has been subjected to similar investigation, scrutiny, or application of law." *Id.*, ¶ 163.

"The Constitution prohibits selective enforcement of the law based on considerations such as race . . . and the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause." *Saunders v. Thies*, 38 F.4th 701, 714 (8th Cir. 2022) (quoting *Gilani v. Matthews*, 843 F.3d 342, 347 (8th Cir. 2016)) (cleaned up). To prevail on a selective enforcement claim, a plaintiff "must show both that the enforcement had discriminatory effect,

and that the enforcement was motivated by discriminatory purpose." *Gilani*, 843 F.3d at 348 (8th Cir. 2016) (quoting *United States v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996)).

Plaintiffs fail to identify any enforcement by any of the State Defendants. The Attorney General's alleged statements about RTTL are not enforcement. The Attorney General's alleged statements are his own protected speech. And ASD's purported investigation of Plaintiffs is likewise not enforcement. After all, the Complaint does not allege that ASD (or Commissioner Marshall or Joslin) issued a subpoena to Plaintiffs or sued Plaintiffs. It alleges only that ASD sent information requests to Plaintiffs, which Plaintiffs responded to voluntarily. Even if that were characterized as enforcement, the Complaint does not identify any similarly situated groups or persons as a comparator. While the Complaint alleges that Plaintiffs are comparable to an entity called EPIC Real Properties in Plano, Texas, ECF No. 1, ¶ 68, it does not allege that State Defendants would have any authority to investigate or enforce Arkansas's laws against EPIC—an entity that is outside of Arkansas's borders. Accordingly, Plaintiffs fail to state an equal protection claim against State Defendants.

**E. Plaintiffs fail to state a due process claim against ASD Defendants.**

In Count V of the Complaint, Plaintiffs assert a due process claim against ASD Defendants. ECF No. 1, ¶¶ 167–169. The Complaint alleges that "[t]he Due Process Clause requires fair notice before the government imposes burdens on individual rights." *Id.*, ¶ 168. It further alleges that ASD's investigation has caused reputational harm to and stigmatizes Plaintiffs and chills their speech, and because ASD's alleged investigation has not been closed, it has "Placed the Plaintiffs in a due process no-man's-land." *Id.*, ¶ 169.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits States from "depriv[ing] any person of life, liberty, or property, without due process of

law." U.S. Const. amend. XIV, § 1. A procedural due process claim consists of two elements: "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). "The possession of a protected life, liberty or property interest is a condition precedent to the government's obligation to provide due process of law, and where no such interest exists, there can be no due process violation." *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997).

Plaintiffs' due process claim fails on both elements. Plaintiffs do not allege deprivation by state action of a protected interest in life, liberty, or property. Nor do they allege inadequate state process. After all, ASD Defendants have not undertaken any enforcement against Plaintiffs and therefore have not deprived Plaintiffs of any protected interest. Likewise, state process could not possibly be inadequate because ASD Defendants have not enforced any laws or taken any action against Plaintiffs. No subpoenas have been issued to Plaintiffs and no lawsuit has been filed against Plaintiffs by ASD. So Plaintiffs fail to state a due process claim.

**F. Plaintiffs fail to state a declaratory judgment claim against State Defendants.**

Plaintiffs fail to state a declaratory judgment claim against State Defendants. *See* ECF No. 1, ¶¶ 170–172. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "The phrase 'case of actual controversy' in § 2201 'refers to the type of Cases and Controversies that are justiciable under Article III.'" *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers*, 687 F.3d 1076, 1081 (8th Cir.2012) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). "There must be a concrete dispute between parties

having adverse legal interests, and the declaratory judgment plaintiff must seek specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Maytag Corp.*, 687 F.3d at 1081 (cleaned up). "[D]eclaratory relief is limited to *prospective* declaratory relief." *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019).

Plaintiffs fail to allege a concrete dispute against any of the State Defendants. While the Complaint alleges that "ASD's indefinite open investigation violates due process," Plaintiffs have failed to state a due process claim against ASD. Likewise, Plaintiffs have failed to plausibly allege any other constitutional violations, and they have failed to allege that they have suffered any injuries. Thus, there is no actual controversy between the parties.

**G. Plaintiffs' state-law abuse of process claim against State Defendants is barred by sovereign immunity, and even if it weren't, Plaintiffs fail to state a claim.**

Plaintiffs assert an abuse of process claim against State Defendants. ECF No. 1, ¶¶ 177–179. Abuse of process is a state law tort claim. *See Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 844–45 (8th Cir. 2009). Plaintiffs cannot assert state law claims against State Defendants in their official capacities in federal court. *See Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)). Specifically, the Eleventh Amendment and sovereign immunity principles bar this Court from instructing "state officials on how to conform their conduct to state law" because "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). *See Smith v. Reynolds*, 139 F.4th 631, 637 (8th Cir. 2025) (citing *Pennhurst* and barring state

law claims based on sovereign immunity). Accordingly, Plaintiffs abuse of process claim is barred by the Eleventh Amendment and principles of sovereign immunity.

Even if Plaintiffs' abuse-of-process claim were not barred by sovereign immunity, it would still fail. "The tort of abuse of process under Arkansas law consists of three elements: (1) a legal procedure set in motion, whether properly or improperly, that is (2) perverted to accomplish an ulterior purpose for which it was not designed, and (3) a willful act after the issuance of the process that is not proper in the regular conduct of the proceeding." *Gibson*, 557 F.3d at 844–45 (citing *S. Ark. Petroleum Co. v. Schiesser*, 343 Ark. 492, 36 S.W.3d 317, 323 (2001). "The key to an abuse-of-process claim is improper use of process *after* issuance, even when issuance has been properly obtained." *Wal-Mart Stores, Inc. v. Binns*, 341 Ark. 157, 15 S.W.3d 320, 323 (2000) (emphasis in original). Thus, "abuse of process is somewhat in the nature of extortion or coercion." *Union Nat'l Bank of Little Rock v. Kutait*, 312 Ark. 14, 846 S.W.2d 652, 654 (1993).

This claim fails on every front. None of the State Defendants have set a legal procedure in motion. The Complaint does not allege that subpoenas have been issued to Plaintiffs, that search warrants have been obtained or executed, or that any lawsuits have been filed against them by State Defendants. Nor does the complaint allege that any willful act after the issuance of the process has occurred, because no process has been issued in the first place. Plaintiffs abuse of process claim is meritless and should be dismissed.

## Conclusion

The claims against State Defendants should be dismissed on sovereign immunity grounds and for failure to state a claim.

Respectfully submitted,

By: Ryan Hale
Ark. Bar No. 2024310
Senior Assistant Attorney General

Jordan Broyles
Ark. Bar No. 2015156
Senior Assistant Attorney General

Office of the Arkansas Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
(501) 295-7419
(501) 682-2591 fax
ryan.hale@arkansasag.gov
jordan.broyles@arkansasag.gov

*Counsel for Defendants Arkansas Securities Department, Commissioner Susannah Marshall, Joe Joslin, and Attorney General Tim Griffin*