**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**ERIC ORWOLL; PETER JULIUS CSERE; SCOTT THOMAS HALLOWOOD; WISDOM WOODS LLC, an Arkansas limited liability company; GLOBAL HOMESTEAD SOLUTIONS LLC, an Arkansas limited liability company; NORTH ARKANSAS EXCAVATION LLC, an Arkansas Limited liability company; ALLEGORY ACRES LLC, an Arkansas limited liability company; and RETURN TO THE LAND, an unincorporated private membership association** **PLAINTIFFS**

**v.** **3:26CV00239 BSM**

**UNITED STATES DEPARTMENT OF JUSTICE; HARMEET K. DHILLON[1], in her official capacity as Assistant Attorney General, Civil Rights Division; CARRIE PAGNUCCO, in her official capacity as Chief, Housing and Civil Enforcement Section; KATIE LEGOMSKY, in her official capacity as Trial Attorney; SHANNON SMITH, in her official capacity as Civil Chief, U.S. Attorney's Office, Eastern District of Arkansas; JONATHAN D. ROSS, in his official capacity as United States Attorney for the Eastern District of Arkansas; UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; SCOTT TURNER, in his official capacity as Secretary of Housing and Urban Development; CRAIG TRAINOR, in his official capacity as Assistant Secretary for Fair Housing and Equal Opportunity; LON D. MELTESEN, in his official capacity as Director, Office of Special Investigations; HUGH JAMES McGLINCY, in his official capacity as Investigator, Office of Special Investigations; ROBERT A. DOLES, in his official capacity as Acting Deputy Assistant Secretary for Enforcement; ARKANSAS SECURITIES DEPARTMENT; SUSANNAH MARSHALL, in her official capacity as Arkansas Securities Commissioner; JOE JOSLIN, in his official capacity as Associate General Counsel; DAVID CAMERON, in his official capacity as City Manager, Springfield, Missouri; TIM GRIFFIN, in his official capacity as Attorney General of Arkansas** **DEFENDANTS**

---

[1] Harmeet K. Dhillon has resigned from her position as Assistant Attorney General. The Acting Assistant Attorney General is Craig Trainor.

**BRIEF IN SUPPORT OF HUD DEFENDANTS' MOTION TO DISMISS**

Plaintiffs claim that an ongoing investigation initiated by the United States Department of Housing and Urban Development ("HUD") into them violates various constitutional rights and the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"). They also claim that HUD employees acting in their official capacity have conspired with the United States Department of Justice and with state and local officials to deprive them of their civil rights, in violation of 42 U.S.C. §§ 1983 and 1985(3). Plaintiffs also assert a claim for abuse of process.

As an initial matter, neither Section 1983 nor Section 1985 create a cause of action against the HUD Defendants[2]. Similarly, Plaintiffs' Fourteenth Amendment claim is not cognizable against the HUD Defendants. Plaintiffs' "abuse of process" claim, which the HUD Defendants construe as a claim under the Federal Tort Claims Act ("FTCA"), is also not cognizable. Each of these claims must be dismissed for lack of subject matter jurisdiction.

Plaintiffs' remaining claims are also not cognizable because they challenge an ongoing investigation that is not a final agency action. Although Plaintiffs claim that the HUD Defendants committed agency action by concluding conciliation efforts and elevating the investigation into a formal complaint, HUD's enforcement action is still ongoing, and the cessation of conciliation did not determine any legal rights or obligations. Plaintiffs' constitutional claims are appropriately brought as APA claims in this matter and subject to the same limitations.

Even if the Court determines that Plaintiffs may proceed on their constitutional claims prior to a final agency action, those should be dismissed for failure to state a claim. Plaintiffs have failed to allege sufficient factual matter to plausibly claim entitlement to relief. As to the First Amendment retaliation claim, Plaintiffs failed to adequately plead that the HUD Defendants

[2] Plaintiffs name HUD as an agency and several HUD officials in their official capacity as defendants; they will be collectively referred to as the HUD Defendants.

held a racial animus against them, that such animus was a but-for cause of HUD's conduct, or that a person of ordinary firmness would be chilled from engaging in First Amendment activity. As to the compelled speech claim, Plaintiffs failed to plausibly plead that the HUD Defendants exacted a penalty on them for their protected speech or coerced acceptance of HUD's particular message. Next, Plaintiffs failed to adequately plead the elements of their Equal Protection claim; namely, that HUD's activities had both racially discriminatory purpose and effect. Further, Plaintiffs failed to plausibly allege that the HUD Defendants deprived them of a protected liberty or property interest, as required to sustain their Due Process Claim.

Finally, Plaintiffs' request for declaratory relief is unwarranted. The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 ("DJA"), does not provide an independent cause of action, but rather a form of relief for cognizable claims. Because Plaintiffs' substantive claims should be dismissed, declaratory relief relating to those underlying claims is inappropriate.

For these reasons, this Court should dismiss Plaintiffs' complaint.

# BACKGROUND

**Factual Background**

A. The Plaintiffs

The Complaint describes Plaintiff Return to the Land ("RTTL") as a nationwide unincorporated private membership association, with no legal status, containing over 1,000 members. Compl., Doc. No. 1, ¶ 24. It alleges that RTTL does not own, sell, rent, lease, or otherwise make available any real estate or dwelling to its members, and that RTTL is distinct from Plaintiff Wisdom Woods LLC ("Wisdom Woods"), which is a legal entity that owns approximately 158 acres (the "Property") near Ravenden, Sharp County, Arkansas. *Id.* ¶¶ 20, 24. The Complaint describes Wisdom Woods as an expense-sharing agreement among a group of

approximately thirty-one members who purchased land together, and the Complaint alleges that Wisdom Woods does not advertise or solicit members from the public. *Id.* ¶ 20. Plaintiffs Orwoll and Csere are the co-founders of RTTL and residents of the Property, with Csere serving as a managing member of Wisdom Woods. *Id.* ¶¶ 17-18. Hallowood is a member of RTTL and a resident of the Property and was interviewed for a documentary that Plaintiffs allege set off the investigations into them. *Id.* ¶ 19; *see also id.* ¶¶ 48-53, 116. Global Homestead Solutions LLC ("Global") is a construction service that Plaintiffs allege does not sell, rent, or broker real property; Csere is its sole member. *Id.* ¶ 21. North Arkansas Excavation LLC ("North Arkansas Excavation") is an excavation service that Plaintiffs allege does not sell, rent, or broker real property; Hallowood is its sole member. *Id.* ¶ 22. Allegory Acres LLC ("Allegory Acres") is a corporation that Plaintiffs allege does not transact with the public and has "no apparent connection to any housing transaction." *Id.* ¶ 23.

B. Allegations of the Complaint

The Complaint alleges that the HUD Defendants violated the First Amendment (First Amendment Retaliation in Count I and Compelled Speech in Count IV), the Equal Protection Clause (Count III), the Due Process Clause (Count V), 42 U.S.C. §§ 1983 and 1985(3) (Count II), and Section 706(2) of the Administrative Procedure Act (Count VI). It alleges that the HUD Defendants committed an "abuse of process," which the HUD Defendants construe as an FTCA claim (Count VIII). It also invokes the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (Count VII).

The Complaint alleges that on July 21, 2025, the media organization Sky News published an online documentary about RTTL which Plaintiffs allege portrays their community as a "fortress for the white race" that contained multiple false statements of fact and fabricated

evidence. Compl., Doc. No. 1, ¶¶ 3, 50. It alleges that the documentary "triggered a cascade of media coverage," which Plaintiffs contend triggered government investigations. *Id.* ¶¶ 4, 52, 53.

On February 12, 2026, HUD issued a Secretary-Initiated Investigation Letter ("Investigation Letter"), addressed to Orwoll and Wisdom Woods, notifying the recipients that HUD had initiated an investigation into RTTL under the Fair Housing Act. *See* Compl., Doc. No. 1, ¶ 64; *see also* Investigation Letter (attached to Motion to Dismiss as Exhibit A).[3] The investigation was undertaken pursuant to the authority granted HUD at 42 U.S.C. § 3610(a)(1)(A)(iii). *Id.* The letter notified the recipients of the evidence that prompted the investigation and the pertinent FHA provisions. *See* Investigation Letter, Ex. A, at 1-2; Compl., Doc. No. 1, ¶ 65. On February 20, 2026, HUD issued a Request for Information (attached to Motion to Dismiss as Exhibit B) to various respondents.[4] *See* Compl., Doc. No. 1, ¶ 66.

Also on February 12, 2026, HUD accidentally mailed to Orwoll a Fair Housing Act complaint notification letter ("EPIC Letter," attached to Motion to Dismiss as Exhibit C), that was intended for respondent EPIC Real Properties, Inc. ("EPIC"), a real estate company in Plano, Texas. *See id.* ¶¶ 68-69. The Complaint alleges that the substance of the Investigation Letter to Plaintiffs and that of the EPIC Letter evidence disparate treatment between the groups in HUD's enforcement of the FHA. *See id.* ¶¶ 69-78. It alleges that disparate treatment included: the EPIC investigation being premised on a complaint filed with HUD by an outside party, whereas Plaintiffs' investigation was Secretary-initiated based off the documentary; the EPIC Letter assured the targets that HUD "made no determination as to whether the complaint against

---

[3] When ruling on a Rule 12(b)(6) motion, the Court can consider materials "incorporated by reference or integral to the claim." *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

[4] The Request For Information identified as respondents: "Eric Orwoll, Wisdom Woods LLC ("Wisdom") Global Homestead Solutions LLC ("Global"), North Arkansas Excavation LLC ("North Arkansas"), Allegory Acres LLC ("Allegory"), Return to the Land, RTTL Land Assertion LLC and all related entities (collectively "RTTL")." Exhibit B to Motion to Dismiss at 1.

you has merit," whereas the letter to Plaintiffs had no such assurance, instead accusing Plaintiffs of operating "under the guise of a 'private membership association'"; the EPIC Letter notified the targets of their procedural rights, whereas the letter to Plaintiffs contained no such notice; the EPIC Letter contained assurances of impartiality, standardization, and the possibility of dismissal, whereas the letter to Plaintiffs did not. *See id*.

On July 2, 2026, HUD transmitted a proposed Conciliation Agreement to Plaintiffs ("Proposed Agreement," attached to Motion to Dismiss as Exhibit D). *See* Compl., Doc No. 1, ¶ 83. The Proposed Agreement listed as Respondents RTTL, Wisdom Woods, Orwoll, Csere, and Hallowood. *See id*.; *see also* Proposed Agreement, Ex. D to Mot. to Dismiss, at 2. The Proposed Agreement would have required Respondents to pay $40,000 into a compensation fund, pay a $10,000 civil penalty, be subject to HUD monitoring, and place on their website the statement: "[W]e are committed to equal housing opportunities. We do not discriminate based on race, color, national origin, religion or any other protected classes."[5] *See* Compl., Doc. No. 1, ¶ 84; Proposed Agreement, Ex. D to Mot. to Dismiss, ¶¶ 23, 27-28, 33-36. On July 30, 2026, an agent of HUD's Office of Fair Housing and Equal Opportunity ("FHEO") sent an email notifying Plaintiffs that "if we do not hear from you regarding conciliation this week we will consider conciliation closed, so I hope to hear from you because I do think, as we discussed, there is a possibility of successful resolution." Compl., Doc. No. 1, ¶ 86. That same day, Plaintiffs' counsel responded: "We'd like to find a time to discuss some high-level issues with it with you before we start negotiating the finer points." *Id.* ¶ 87. On August 4, 2026, FHEO emailed Plaintiffs' counsel stating "[g]iven the objections you raised[6] and your belief that it would be premature to discuss

[5] Plaintiffs also allege that the Proposed Agreement would have put restrictions on their use of the word "community." Compl., Doc. No. 1, ¶¶ 6, 84.
[6] These objections are described in detail in the Complaint. Compl., Doc. No. 1, ¶ 89.

the Department's settlement terms please be informed that the Department *will be* converting the Secretary-Initiated Inquiry into a Secretary-Initiated Complaint." *Id.* ¶ 88 (emphasis added). When plaintiffs commenced this action, the HUD Defendants had not yet converted the inquiry into a formal complaint, and Plaintiffs never alleged HUD had done so.

The Complaint also alleges that HUD failed to initiate investigations into similarly situated groups. *Id.* ¶ 158. It only identifies three such groups – Habitat for Humanity International, a group called "Black to the Land," and an unnamed senior housing residence for individuals identifying as LGBTQ in Washington, D.C – but does not allege that HUD ever contemplated or deliberated investigating these entities. *See id.* ¶¶ 102-04.

The Complaint alleges that HUD engaged in a conspiracy with the non-HUD Defendants to punish Plaintiffs for their protected speech and association. *See id.* ¶¶ 115-27. It alleges conspiracy through a common trigger (the documentary), common targets, compelled speech from the Plaintiffs and limited their rights of association, a pattern of "escalation rather than resolution," and refusal to close investigations. *See id*. The Complaint alleges that there is either "explicit coordination or convergent animus" amongst the Defendants. *Id.* ¶ 127.

The Complaint alleges that Plaintiffs have suffered a "chilling" of protected First Amendment activities – including those relating to their speech and associations – have incurred legal fees and emotional distress, and have suffered reputational harm, deterrence of prospective members, property value diminution, and privacy loss. *Id.* ¶¶ 106-14.

**Programmatic and Legal Background**

A. <u>The Fair Housing Act</u>

The Fair Housing Act ("FHA") prohibits property owners from discriminating in the provision and advertising of dwellings on the basis of race, color, religion, sex, handicap,

familial status, or national origin. 42 U.S.C. § 3604; *see also Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010). A "dwelling" means "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." 42 U.S.C. § 3602(b). The FHA further prohibits any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person on the same protected grounds. 42 U.S.C. § 3605; *see also Gaona v. Town & Country Credit*, 324 F.3d 1050, 1056 (8th Cir. 2003). A "residential real estate-related transaction" includes "[t]he selling, brokering, or appraising of residential real property." 42 U.S.C. § 3605(b)(2).

B. Enforcement of the Fair Housing Act

An aggrieved person may file a complaint with HUD alleging discriminatory housing practices in violation of the FHA. *See* 42 U.S.C. § 3610(a)(1)(A)(i). The statute also grants the Secretary of HUD the authority to file a complaint on his own initiative. *Id*. The Secretary may investigate housing practices to determine whether a complaint should be filed. 42 U.S.C. § 3610(a)(1)(A)(iii); *see also* 24 C.F.R. § 103.200(b). HUD's investigation into Plaintiffs was initiated under this authority. *See* Investigation Letter, Ex. A to Mot. to Dismiss, at 1 n.1. If a HUD-initiated investigation results in a filed complaint, HUD must, not later than 10 days after such filing, serve on the respondents a notice identifying the alleged discriminatory housing practice and advising such respondents of their procedural rights. 42 U.S.C. § 3610(a)(1)(B)(ii). Where a formal complaint has been filed, HUD's regulations instruct HUD to attempt, where feasible, to reach a conciliation agreement. *See* 42 U.S.C. § 3610(b); 24 C.F.R. Part 103, Subpart E.

In Secretary-initiated investigations, HUD's regulations do not prohibit HUD from conciliating a matter prior to issuance of a Secretary-initiated complaint. *See* 24 C.F.R. Part 103, Subpart E. The investigation remains open until either the parties reach a conciliation agreement or HUD makes reasonable cause and charging determinations. *See* 42 U.S.C. § 3610(b)(1); 24 C.F.R. §§ 103.225, 103.310, and Part 103 Subpart F. The Complaint alleges that Plaintiffs and HUD engaged in a conciliation process but did not secure an agreement. *See* Compl., Doc. No. 1, ¶¶ 83-91. The Complaint does not allege that HUD has issued reasonable cause and charging determinations. *See generally* Compl., Doc. No. 1.

As permitted by statute, the Secretary delegated authority to enforce the FHA to the Assistant Secretary for FHEO. *See* 42 U.S.C. § 3535(d) (authority of Secretary to delegate powers); *Consolidated Delegation of Authority for the Office of Fair Housing and Equal Opportunity*, 76 Fed. Reg. 73984 (Nov. 29, 2011).

In aid of FHA investigations, FHEO may issue subpoenas or requests for information, requiring the production of documents. 42 U.S.C. § 3611(a); 24 C.F.R. § 180.545(b); 24 C.F.R. § 103.215(b) (adopting, for FHEO-led investigations, the subpoena powers enumerated at 24 C.F.R. § 180.545). HUD's regulations provide multiple avenues for respondents to challenge the scope of information requests. *See, e.g.*, 24 C.F.R. §§ 180.535(a) (requests for protective orders); 180.525(c) (objections to requests for production); 180.510(d) (objections to interrogatories); 180.545(f) (mechanism to quash or limit administrative subpoenas); 180.530(b)(3) (objections to request for admissions). When pertinent motions are filed, an administrative law judge rules on the merits. *See, e.g.*, 24 C.F.R. §§ 180.180.535(a), 180.530(d)-(e), 180.545(f). Plaintiffs do not allege that they moved to limit the scope of the February 20, 2026 Request for Information.

## STANDARD OF REVIEW

Plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). In the absence of jurisdiction expressly conferred by statute or the Constitution, Federal Courts lack the power to adjudicate claims. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Plaintiffs bear the burden of establishing jurisdiction. *See Johnson v. Woodcock,* 444 F.3d 953, 955 (8th Cir. 2006).

The function of a Rule 12(b)(1) motion is to allow the Court to address the threshold jurisdiction question as "judicial economy demands that [it] be decided at the outset rather than deferring it until trial." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). A District Court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Because the issue of subject matter jurisdiction goes directly to the Court's power to hear the case, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d at 729. In other words, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Even if the Court determines that Plaintiffs may proceed on the constitutional claims without final agency action, Plaintiffs' complaint must be dismissed because it fails to state a claim with respect to the constitutional claims. *See* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Warmington v. Bd. of Regents of the Univ. of Minn.*, 998 F.3d 789, 795 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A

claim has facial plausibility where the pleaded facts allow the court to draw the reasonable inference that the opposing party is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. When reviewing a Rule 12(b)(6) motion to dismiss, this Court must "take the plaintiff's factual allegations as true." *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

## ARGUMENT

Plaintiffs' complaint against the HUD Defendants should be dismissed for multiple reasons. Several of the claims must be dismissed for lack of cognizable action against the HUD Defendants because the cited statutes or Amendments do not provide causes of action. Further, because HUD has taken no final agency action, judicial review is inappropriate. As HUD's FHA enforcement action is ongoing and HUD has not finalized its decision-making, both constitutional and prudential limitations preclude the court from reviewing this matter. Finally, even assuming the Court determines that it has jurisdiction to hear the constitutional claims, it should dismiss each of the claims for inadequate pleadings. Because the claims should be dismissed, declaratory relief is inappropriate.

### I. Count II, Count VIII, and That Portion of Count V Claiming Violations of the Fourteenth Amendment Against The HUD Defendants Should be Dismissed Because The Underlying Laws Do Not Apply to the Federal Government.

Plaintiff levels allegations against HUD under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) [Count II], under the Fourteenth Amendment [Count V], and under a theory of "abuse of

process" [Count VIII]. Compl., Doc. No. 1. at ¶¶ 153-60, 167-69, 177-79. Case law shows that these authorities do not provide cognizable rights of action against the federal government here.

A. Count II [42 U.S.C. § 1983 and 42 U.S.C. § 1985(3)]

Neither 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) provides a cause of action against the HUD Defendants. By its own language[7], Section 1983 creates a cause of action only against those acting under the color of State, territorial, or D.C. law, and thus does not provide this Court jurisdiction to hear a claim against the HUD Defendants. *See District of Columbia v. Carter*, 409 U.S. 418, 424 (1973). Section 1983 "does not authorize redress against federal agencies or officials who were acting under federal law." *Cobb v. U.S. Dep't of Educ. Off. For. C.R.*, 487 F. Supp. 2d 1049, 1055-56 (D. Minn. 2007) (quoting *Little Earth of United Tribes, Inc. v. U.S. Dept. of Housing & Urban Dev.*, 584 F. Supp. 1292, 1298 (D. Minn. 1983)); *see also Daniels v. U.S. Dept. of Housing & Urban Dev.*, No. 4:16CV00749 BSM, 2017 WL 3161207, *3 (E.D. Ark. July 25, 2017).

Section 1985(3) has been interpreted to relate almost exclusively to state or private conspiracies. *See Kush v. Rutledge*, 460 U.S. 719, 719 (1983) (reasoning that while subsection 1985(2) relates" to institutions and processes of the Federal Government," subsection 1985(3) "encompass[es] activity that is usually of primary state concern") (citing *Griffin v. Breckenridge*, 403 U.S. 88 (1971)); *see also Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429 (8th Cir. 1986) (the only federal activities that gives rise to a Section 1985(3) claim are conspiracies to interfere with the right to support candidates in federal elections)). Because Plaintiffs do not allege that the HUD Defendants undertook activities covered by Section

[7] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

1985(3), that statute cannot provide a cause of action against the HUD Defendants. *See Harrison*, 780 F.2d at 1429.

B. Count VIII - Abuse of Process

In Count VIII, Plaintiffs allege "abuse of process," contending that the HUD Defendants abused the investigative process. Nowhere in the Complaint do Plaintiffs identify an "abuse of process" cause of action or provide a legal definition for the term. The only "abuse of process" cause of actions of which HUD is aware come from state tort law involving the alleged abuse of a legal proceeding. *See Forrest City Mach. Works, Inc. v. United States*, 953 F.2d 1086 (8th Cir. 1992). If Plaintiffs are attempting to plead a state law abuse of process claim against the HUD Defendants, that claim must be dismissed for lack of subject matter jurisdiction.

The FTCA authorizes claims for tort damages against the United States. 28 U.S.C. § 2674. The statute permits "abuse of process" claims only where such claims arise from "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h); *see also Robinson v. United States,* 139 F.4th 994, 996–97 (8th Cir. 2025). An "investigative or law enforcement officer" includes anyone "who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* Plaintiffs have not alleged that any of the HUD Defendants are "investigative or law enforcement officers." *See generally*, Compl., Doc. No. 1. Consequently, Plaintiffs have failed to show that their abuse of process claim is cognizable under the FTCA. *Id.*; *see also Forrest City Machine Works*, 953 F. 2d at 1087 (explaining that the FTCA exempts abuse of process from its waiver of sovereign immunity, so the United States cannot be sued for abuse of process claims).

C. Count V – Fourteenth Amendment

To the extent that Count V makes a claim under the Fourteenth Amendment, such claim is prohibited against the Federal Government. *See Carter*, 409 U.S. at 424 (1973) ("actions of the Federal Government and its officers are beyond the purview of the [Fourteenth] Amendment").

## II. Plaintiffs' Remaining Claims Against HUD Are Barred Under the APA for Lack of Final Agency Action and/or a Discrete Non-Discretionary Mandate

The Administrative Procedure Act ("APA") creates a cause of action for injured persons to challenge final agency actions, including actions that are allegedly "contrary to constitutional right" or "otherwise not in accordance with law." *See* 5 U.S.C. §§ 704, 706(2). While some of the claims against HUD are expressly asserted under the APA, all of Plaintiffs' remaining claims against HUD – including those arising under the Constitution – are properly construed as contrary-to-law claims under the APA. *See, e.g.*, *Loper Bright Enters v. Raimondo*, 603 U.S. 369, 392 (2024) (5 U.S.C. § 706 of the APA provides for judicial review of "constitutional and statutory" claims against federal agencies); *Bland v. United States*, 412 U.S. 909, 912 (1973) (constitutional claim treated as APA claim); *Ellis Fischel State Cancer Hosp. v. Marshall*, 629 F.2d 563, 567 (8th Cir. 1980) (same); *W. Virginia v. U.S. Env't Prot. Agency*, 669 F. Supp. 3d 781, 805-07 (D.N.D. 2023) (same); *Purdy v. Carter*, No. CV BAH-24-582, 2024 WL 4651275, at *6 (D. Md. Nov. 1, 2024) (applying *Loper Bright* to a constitutional Equal Protection claim).

Plaintiffs' remaining claims against HUD are barred by the APA because the challenged conduct is not "final agency action." 5 U.S.C. § 704.[8] "Agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act. *See* 5 U.S.C. §§ 551(13), 701(b)(2).

---

[8] Where there has been no final agency action, the APA only waives sovereign immunity to the extent that courts may compel agency action unlawfully withheld or unreasonably delayed. *See* 5 U.S.C. § 706(1). Plaintiffs did not assert a claim against HUD under Section 706(1). *See* Compl., Doc. No. 1, ¶¶ 175-76.

An agency action is final "if the action both marks the consummation of the agency's decision-making process and is one by which rights or obligations have been determined, or from which legal consequences will flow." *Minnesota Bankers Ass'n*, 152 F.4th 893, 897 (8th Cir. 2025) (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotations omitted)). The "core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). Put differently, courts must determine whether the agency activity is a "binding determination" that compels affirmative action or prohibits otherwise lawful action. *Minnesota Bankers Ass'n*, 152 F.4th at 897.

This matter is similar to other cases where the Eighth Circuit held that agency activities did not constitute "final agency action," thus precluding judicial review. In *Newsome v. EEOC*, the Court held that the EEOC's dismissal of an administrative complaint for lack of jurisdiction did not constitute final agency action because the dismissal did "not determine [plaintiff's] rights or have legal consequences . . . it simply ended the agency's investigation of her charge". 440 F.3d 1038, 1045 (8th Cir. 2006). In *Minnesota Bankers Association*, the Court held that a Guidance Letter issued by the FDIC did not constitute final agency action because it "neither orders a covered institution to take specific action nor declares any particular practice unlawful." 152 F.4th at 899. Here, the Complaint (¶ 143) concedes that "HUD's investigation has not proceeded to a final ALJ determination," and does not allege that HUD has made a reasonable cause or charging determination, showing that the FHA enforcement process has not be finalized.

Indeed, in addition to there being no final agency determination on the merits here, the Complaint also acknowledges that Plaintiffs have not presented any interim/interlocutory

investigation process allegations to an ALJ either (much less obtained an ALJ ruling thereon). Compl., Doc. No. 1, ¶ 144. As described above, Plaintiffs have various mechanisms at the administrative level to contest investigative information requests sent by HUD. Plaintiffs can, at the administrative level, object to written discovery they receive, they can seek a protective order from the ALJ, and they can move for the ALJ to quash subpoenas. *See* 24 C.F.R. §§ 180.545(f) (mechanism to quash or limit administrative subpoenas), 180.535(a) (requests for protective orders); 180.525(c) (objections to requests for production); 180.510(d) (objections to interrogatories). The Complaint does not allege that Plaintiffs availed themselves of such administrative procedures, nor does it establish that a final agency action has been taken here that is reviewable in court.

To the extent that Plaintiffs allege that a Secretary-initiated investigation (or the eventual filing of a formal complaint) is "final agency action," that contention is inaccurate. *See* Compl., Doc. No. 1, ¶¶ 175, Prayer for Relief(A)(d); *see also Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) ("[a]n agency's initiation of an investigation does not constitute final agency action"). The opening of an investigation or complaint does not constitute a "rule, order, license, sanction, relief, or the equivalent." *See* 5 U.S.C. § 551(13); *see also F.T.C. v. Standard Oil Co. of California,* 449 US. 232, 245 (holding that the issuance of a complaint averring that a respondent may have violated a statute did not have legal force or practical effect). Further, the Secretary-initiated complaint does not end the investigation process; the investigation is still ongoing until HUD issues a reasonable cause determination and, if warranted, a charge. *See* 24 C.F.R. §§ 103.225, Subpart F. At this point, HUD has certainly not "completed its decisionmaking process." *See Franklin*, 505 U.S. at 797; *cf. Hope v. Dep't of Veterans Affs.*, No. 4:18CV00114 JLH, 2018 WL 1020122, at *1 (E.D. Ark. Feb. 22, 2018) (notices of proposed debarment sent to

did not mark the "consummation" of the VA's decision-making process where there existed additional "steps" in the investigation process). Further, a Secretary-initiated complaint is not binding, does not determine any rights or obligations, and creates no legal consequences.

Nor was the proposed Conciliation Agreement – the sole activity underlying Plaintiffs' compelled speech claim and part of the Due Process claim – a "final agency action." *See* Compl., Doc. No. 1, ¶ 135, Counts IV-V. While an executed conciliation agreement can end an FHA investigation under HUD's regulations, the failure to reach an agreement does not terminate the investigation. *See* 24 C.F.R. §§ 103.225 ("[t]he investigation will remain open until a determination is made under § 103.400, **or** a conciliation agreement is executed and approved under § 103.310") (emphasis added). The discussions and proposals relating to conciliation agreement determined neither rights nor obligations, nor resulted in any legal consequences on Plaintiffs. *See Minnesota Bankers Ass'n*, 152 F.4th at 897; *Franklin*, 505 U.S. at 797.

Plaintiffs' reliance on *First Choice Women's Resource Centers, Inc. v. Davenport*, 608 U.S. 174 (2026) is also misplaced. There, the Supreme Court held that the plaintiffs had established Article III standing to bring a Section 1983 claim against a State Attorney General. *Id*. at 188. As an initial matter, HUD has not contested Plaintiffs' Article III standing. Additionally, as argued in Section I.A, *supra*, Section 1983 claims are not cognizable against HUD. Therefore, *First Choice's* holding has no bearing upon the APA claims before this Court. Nothing in the *First Choice* opinion abrogates the requirement that there be a "final agency action" before Plaintiffs can proceed on their claims against HUD. Because there is no final agency action here, Plaintiffs' constitutional and APA claims (which are claims under Section 706(2) of the APA) are barred by 5 U.S.C. § 704. *See Minnesota Bankers Ass'n*, 152 F.4th at 897; *Lane*, 187 F.3d at 795.

Lastly, Plaintiffs did not assert a claim against HUD under Section 706(1) of the APA. *Compare* Compl., Doc. No. 1, ¶ 175, *with* ¶ 176 (claiming a Section 706(1) violation by DOJ). But even if the Court construes the Complaint as asserting a Section 706(1) claim against HUD, that claim would also fail. The Supreme Court has held that a § 706(1) claim can proceed only where a plaintiff asserts that an agency failed to "perform a [discrete] ministerial or non-discretionary act" that "it [was] required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64-65 (2004). Plaintiffs failed to identify any discrete ministerial act that HUD was required yet failed to take. *Id*. For example, Plaintiffs cannot point to any provision of law imposing a discrete, ministerial, nondiscretionary duty on HUD not to open an investigation in these circumstances or to keep conciliation discussions ongoing.

## III. Plaintiffs Fail to Sufficiently Plead Their Constitutional Claims Against HUD

Even if the Court determines that Plaintiffs can pursue their constitutional claims prior to final agency action by HUD, those claims fail to state a claim for which relief can be granted and must be dismissed.

### A. First Amendment Retaliation

Plaintiffs allege that HUD retaliated against them for engaging in constitutionally protected speech and association activities. *See* Compl., Doc. No. 1, ¶¶ 146-52. Plaintiffs failed, however, to plead sufficient facts beyond the recital of the threadbare elements of a retaliation claim.

To survive a motion to dismiss, Plaintiffs must plausibly plead that the HUD Defendants, "to retaliate for [] protected [First Amendment] activity, took adverse action against [them] that would chill a person of ordinary firmness from engaging in that activity". *See Zutz v. Nelson*, 601 F.3d 842, 848–49 (8th Cir. 2010) (quoting *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir.

2007)); *see also Hartman v. Moore*, 547 U.S. 250, 256 (2006). The ordinary firmness standard "is objective rather than subjective and evaluates what a reasonable person would have done, not whether a particular plaintiff was deterred." *Monk v. Flowers*, No. 4:20-CV-00033 KGB, 2021 WL 4505477, at *4 (E.D. Ark. Sept. 30, 2021) (citing *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003)).

Plaintiffs failed to plausibly plead that the HUD Defendants took action against them that would chill a person of ordinary firmness from engaging in Plaintiffs' First Amendment activities. As to a chilling effect, Plaintiffs allege that they are "deterred from posting on social media, publishing articles, or speaking publicly. . . [p]rospective and existing members are hesitant to associate openly." Compl., Doc. No. 1, ¶ 107 ("First Amendment Chill"). However, while Plaintiffs allege that the HUD Defendants' actions would chill a person of ordinary firmness, *see* Compl., Doc. No. 1, ¶ 149, they do not make any factual allegations supporting this conclusion. This element is thus not sufficiently plead. *See Zutz*, 601 F.3d at 749 (dismissing a claim where plaintiffs failed to allege facts showing that defamatory statements against them would chill a person of ordinary firmness from engaging in the protected activity" ); *see also Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (dismissing a claim for failure to allege facts showing that embarrassment, humiliation and emotional distress would chill an ordinary person from engaging in protected activity). For these reasons, this claim must be dismissed under Rule 12(b)(6). *See Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022); *Zutz*, 601 F.3d at 849.

B. Compelled Speech

Plaintiffs allege that "[t]he HUD conciliation agreement demanded compelled speech in violation of the First Amendment," specifically the request to post "Government-mandated equal housing opportunity statements on all of the Plaintiffs' inherently expressive social media

platforms, including YouTube, Substack, X, and Telegram-compelling the Plaintiffs to speak the government's message."[9] Compl., Doc. No. 1, ¶¶ 84, 166.

To survive this motion, Plaintiffs are required to show that the HUD Defendants compelled them to make certain speech and either exacted a penalty on them for their protected speech or coerced acceptance of HUD's particular message. *Norgren v. Minnesota Department of Human Services*, 96 F.4th 1048, 1057 (8th Cir. 2024) (citing *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 256 (1974) and *W. Va. State Bd. of Educ. v. Barnette,* 319 U.S. 624, 641 (1943)).

The Complaint acknowledges that the alleged "compelled speech" was a term in a conciliation *proposal*. Compl. at ¶¶ 83-84. Rather than coercing Plaintiffs to accept the term, or penalizing Plaintiffs for not doing so, Plaintiffs allege that HUD decided to end conciliation after Plaintiffs informed HUD that they were not prepared to "start negotiating the finer points" of the proposal. Compl., Doc. No. 1, ¶¶ 87, 88. Plaintiffs have not alleged that HUD has otherwise compelled Plaintiffs to make any speech. Therefore, this claim should be dismissed under Rule 12(b)(6). *See Norgren*, 96 F.4th at 1057.

C. Equal Protection – Selective Enforcement

Plaintiffs allege that HUD selectively enforced the Fair Housing Act against them based on a discriminatory classification – here, their existence as white people with European heritage. *See* Compl., Doc. No. 1, ¶¶ 65, 158, 161-62. They allege that they "are similarly situated to dozens of other private membership associations and intentional communities that define

---

[9] It appears that this references the July 2, 2026, Proposed Agreement, referenced in Complaint ¶¶ 83-85. Section VI.E.23 of the Proposed Agreement states: "Within thirty (30) days of the Effective Date of this Agreement, Respondents agree to review and revise all marketing and other materials for dwellings or residential property, including but not limited to all website content, YouTube, all social media platforms, brochures, advertisements, to ensure they are inclusive, non-discriminatory, and do not convey any preference or limitation based on race, color, national origin or ethnicity, or religion. Respondents shall place on their website language stating the following 'we are committed to equal housing opportunities. We do not discriminate based on race, color, national origin, religion or any other protected classes.'" *See* Proposed Agreement, Ex. D, Mot. to Dismiss, at 7.

membership by race, ethnicity, or religion yet none has been subjected to similar investigation, scrutiny, or application of law." *Id.* ¶ 163.

The standard for sustaining a selective enforcement claim is a "demanding" one. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996). To survive HUD's motion to dismiss, Plaintiffs must have plausibly plead that the HUD Defendants exercised their discretion to enforce the FHA on account of their race, which requires proof of both racially discriminatory effect and purpose. *See Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir. 2003) (citing *Armstrong,* 517 U.S. at 465); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 265 (1977).

To show discriminatory effect, Plaintiffs must plausibly allege that "people of another race violated the law and the law was not enforced against them." *U.S. v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996) (citing *Armstrong* 517 U.S. at 465 and *U.S. v. Brown*, 9 F.3d 1374, 1376 (8th Cir. 1993)). To show discriminatory purpose, Plaintiff's must plausibly allege that HUD's "decision to enforce the law was at least partially based on race." *Id*. Put otherwise, Plaintiffs must show that "similarly situated individuals of a different race were not prosecuted." *Armstrong*, 517 U.S. at 465; *cf. Rowles v. Curators of Univ. of Missouri,* 983 F.3d 345, 360 (8th Cir. 2020) (dismissing a claim of selective enforcement based on sex where Plaintiff failed to allege that a similarly situated person of a different sex was treated more favorably). Conclusory assertions about discriminatory intent are insufficient to meet this standard. *See United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004) ("Plaintiff's conclusory assertion that discrimination is 'easily and readily apparent' is wholly insufficient to support his claim of selective prosecution").

In this Circuit, the burden of showing that a comparator is "similarly situated" is high. *See United States v. White*, 928 F.3d 734, 742–43 (8th Cir. 2019) (citing *United States v. Smith*,

231 F.3d 800, 810 (11th Cir. 2000) (defining "a 'similarly situated' person for selective prosecution purposes as one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant")); *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003) (Plaintiff "bears the burden to demonstrate by a preponderance of the evidence that there were individuals **similarly situated in all respects** to her who were treated differently") (emphasis added).

Plaintiffs failed to sufficiently plead facts supporting their claim that similarly situated groups were not "subjected to similar investigation, scrutiny, or application of law." With respect to EPIC, whom Plaintiffs allege received preferential treatment, Plaintiffs do not plausibly allege that EPIC was similarly situated to them or received more favorable enforcement treatment. The Complaint alleges that a third party filed a formal FHA complaint against EPIC. Compl., Doc. No. 1, ¶ 71. A complaint filed by an aggrieved person proceeds under 42 U.S.C. § 3610(a)(1)(A)(i), whereas HUD initiated an investigation of Plaintiffs under § 3610(a)(1)(A)(iii) to determine whether a Secretary-initiated complaint should be filed. Those proceedings are not procedurally identical. The FHA and its implementing regulations provide specific notice and procedural protections to respondents after a complaint has been filed, including requirements governing service and the opportunity to respond. *See* 42 U.S.C. §§ 3610(a)(1)(B)(ii), 3612; 24 C.F.R. §§ 103.201–203. Those requirements do not apply in the same manner to persons or entities who are subjects of a pre-complaint investigation. Similarly, Plaintiffs allege that HUD's investigation was premised in part on a publicly displayed "Purchase a Lot" hyperlink on RTTL's website, but failed to allege that any other entity had a similar public-facing advertisement. *See* Compl., Doc. No. 1, ¶ 65. Therefore, Plaintiffs failed to plead that EPIC was "similarly situated [to them] in all respects." *Gilmore*, 319 F.3d at 1046.

Moreover, Plaintiffs do not adequately plead that it was treated with discriminatory purpose and effect relative to EPIC. The Complaint readily acknowledges that EPIC is a Muslim-serving community. Compl., Doc. No. 1, ¶¶ 68-78. The Complaint does not allege that EPIC primarily enters transactions with white people. This undermines Plaintiffs' assertion that HUD targeted them for unique enforcement activities because of anti-white animus. *See United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004) (conclusory assertions of discrimination are insufficient to support a selective prosecution claim). *See Bell*, 86 F.3d at 823; *Crooks*, 326 F.3d at 1000.

Additionally, Plaintiffs failed to sufficiently plead that any of their other comparators were similarly situated or that HUD treated Plaintiffs with discriminatory purpose vis-à-vis the comparators. *See Gilmore*, 319 F.3d at 1046. For example, Plaintiffs did not plead that either Habitat for Humanity International or the LGBTQ residence were groups "that define membership by race, ethnicity, or religion." *See* Compl., Doc. No. 1, ¶¶ 102, 104. And Plaintiffs did not plead that HUD *believed* that the "Black to the Land" group and Plaintiffs participated in similar "residential real-estate transactions," such that alleged disparate treatment could be explained by racial animus. *Compare* Compl., Doc. No. 1, ¶ 103, *with* Investigation Letter, Ex. A, Mot. to Dismiss. They also failed to allege that HUD ever contemplated an enforcement action against these entities.

Based on the above, Plaintiffs have failed to plausibly plead a selective enforcement claim. *See Crooks*, 326 F.3d at 1000; *Bell*, 86 F.3d at 823.

D. <u>Due Process</u>

Plaintiffs allege that HUD violated the Fifth Amendment by investigating Plaintiffs without adequate notice, naming additional entities and individuals in the Proposed Agreement, and maintaining an investigation that allegedly imposes reputational, financial, and associational

burdens. Compl., Doc. No. 1, ¶¶ 167–169. These allegations do not state a procedural due process claim because Plaintiffs have not plausibly alleged that HUD deprived them of a protected liberty or property interest.

A procedural due process claim requires, as a threshold matter, a deprivation of a constitutionally protected liberty or property interest. *See Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc). Plaintiffs identify no protected interest that the HUD Defendants has deprived them through the procedural mechanisms used in the investigation.

First, the Supreme Court has held that reputational harm alone does not implicate a liberty or property interest protected by the Due Process Clause. *See Paul v. Davis*, 424 U.S. 693, 701–12 (1976). Under the Eighth Circuit's "stigma-plus" framework, a plaintiff must allege reputational harm coupled with an additional tangible injury, such as an alteration of a previously recognized right or legal status. *See Zutz*, 601 F.3d at 849 (rejected a Due Process claim despite allegations of reputational damage because the plaintiffs had not alleged the necessary additional tangible harm); *Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir. 2003).

Plaintiffs allege that the investigation itself, along with its open-endedness, caused reputational damage, loss of prospective members, reduced property values, emotional distress, legal expenses, uncertainty, and the need to preserve documents. Compl., Doc. No. 1, ¶¶ 106–114, 169. But none of those constitute the deprivation of a protected legal right or status; rather, they are just a list of burdens. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569–71 (1972); *Davis*, 424 U.S at 701–12. Plaintiffs have failed to allege a protected property interest or liberty that is obstructed by these alleged burdens. As to Plaintiffs' allegation that their First Amendment liberties are chilled, HUD previously argued that Plaintiffs failed to plausibly allege such an injury. *See* Section III.A, *supra*.

Plaintiffs' reliance on HUD's Proposed Agreement does not cure this defect. The Agreement proposed monetary payments, monitoring, and changes to Plaintiffs' speech and membership practices, but the Complaint does not allege that Plaintiffs accepted the agreement or that HUD imposed those terms as binding obligations. *See* Compl., Doc. No. 1, ¶¶ 83–88. A proposed, non-executed, and non-enforceable resolution cannot deprive Plaintiffs of rights or legal status.

Second, the alleged lack of advance notice does not independently establish a due process violation. Plaintiffs allege that HUD initially identified Wisdom Woods and Orwoll in its Investigation Letter, later issued a Request for Information to additional entities, and lastly included additional respondents in the Proposed Agreement without first sending each a separate investigation notice. *See* Compl., Doc. No. 1, ¶¶ 64–66, 83–84, 168. However, procedural due process protects against the deprivation of a protected liberty or property interest without adequate process; it does not create a freestanding constitutional right to notice divorced from such a deprivation. *See Roth*, 408 U.S. at 570–71; *Singleton*, 176 F.3d at 424 (en banc). Further, the FHA does not require HUD, during the investigation stage, to provide every person or entity who might become a respondent with advance notice. Plaintiffs identify no statutory or regulatory right to such a procedure. Without a plausible allegation that HUD deprived a Plaintiff of a protected liberty or property interest, the alleged failure to provide earlier or individualized notice does not state a procedural due process claim. *Singleton*, 176 F.3d at 424.

For these reasons, Count V should be dismissed under Rule 12(b)(6) insofar as it asserts a Fifth Amendment procedural Due Process claim against HUD.

E. <u>Declaratory Judgment Act</u>

The DJA "does not provide an independent basis for federal jurisdiction." *Victor Foods, Inc. v. Crossroads Econ. Dev.*, 977 F.2d 1224, 1227 (8th Cir.1992); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). Because this Court should dismiss all of Plaintiffs' other claims, Plaintiffs do not have a cause of action under the DJA. *Id.* Therefore, the Court should dismiss Plaintiffs' DJA claim as well. *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) ("a district court may decline to exercise supplemental jurisdiction when it 'has dismissed all claims over which it has original jurisdiction'").

## CONCLUSION

Plaintiffs cannot pursue claims arising under 42 U.S.C. § 1983 and 1985(3) or for abuse of process against the HUD Defendants, so those claims should be dismissed for lack of subject matter jurisdiction. Because there has not been a final agency action, Plaintiffs' Administrative Procedure Act claims, including constitutional claims arising under the Administrative Procedure Act, must be dismissed for lack of subject matter jurisdiction. Even if the Court determines that Plaintiffs may proceed with their constitutional claims under the APA prior to a final agency action, Plaintiffs fail to state a claim sor which relief can be granted on the constitutional claims, and those claims must be dismissed.

Respectfully submitted,

JONATHAN D. ROSS
United States Attorney
Eastern District of Arkansas

Jamie Goss Dempsey
Ark. Bar No. 2007239
Assistant U. S. Attorney
425 West Capitol Ave., Suite 500
Little Rock, Arkansas 72201
Tel. (501) 340-2600
jamie.dempsey@usdoj.gov